# SUPREME COURT.

## CHARLES GUIDET agt. MARY ANN BROWN and others.

*Husband and wife — Separation — release of dower, when not effectual.*

Where a husband, about to separate from his wife, entered into an agreement in writing with her and a third person, whereby he guaranteed to her the undisturbed possession of $10,000, by him paid to such third person, as a trustee for his wife, together with her personal property, and the wife agreed to accept the provision in satisfaction of her dower right in her husband's lands, which she thereby released:

*Held*, that the agreement did not, in law, release or discharge her dower, and that in so far as the instrument purported to do so, it was a nullity.

That, notwithstanding the agreement, the wife was not, in equity, estopped from asserting her right of dower in her husband's lands after his death.

A wife cannot, directly or indirectly, release her dower to her husband (*Carson* agt. *Murray*, 3 *Paige*, 483).

*Held*, also, that the provision made for the wife, by the agreement, did not put her to an election between it and her right to be endowed in her husband's lands.

To put the wife to an election under section 12, title 3, part 1, chapter 1 of the Revised Statutes, the pecuniary provision alluded to must be tendered to the wife at her husband's death, by last will or otherwise.

*William H. Field*, for plaintiff.

*Field & Deyo*, for defendant Mary Ann Brown.

*Dunning, Edsall, Hart & Fowler*, for defendants Hannah E. Brown and others.

VAN VORST, *J.*— The only subject of real contention in this action which is one in partition is as to whether the defendant Mary Ann Brown shall have dower in so much of

the lands as may be set off as the share of her late husband, John L. Brown, deceased. The parties were married in 1828. In 1855 an agreement was entered into between John L. Brown, of the first part, Mary Ann Brown, of the second part, and George Johnson, of the third part. It recites that the parties of the first and second parts have mutually agreed to separate and live apart for the remainder of their lives, and that the party of the first part was desirous of continuing the party of the second part in the same station of life, and with the same conveniences which she had theretofore had, in consideration of which the party of the first part guaranteed to the party of the second part, quiet and undisturbed possession of the sum of $10,000, by him paid to the party of the third part, as the trustee of the party of the second part, and of all her personal effects, wardrobe, jewelry, plate, and household furniture, and all the property whereof she was, or might thereafter become possessed, with the right to dispose of the same, as though she were a *feme sole*, and unmarried. The parties of the second and third parts agreed to accept these provisions, made for the party of the second part, in payment and satisfaction, of all and every claim for, or by reason of, the intermarriage of the parties of the first and second parts, for alimony, dower, right of dower, or otherwise, and the party of the *second part released the lands*, whereof the party of the first part was seized, from all dower and right of dower, and also released all claim of dower in and to any lands of which the party of the first part should thereafter become possessed; and covenanted, upon request, to *execute in the future, and deliver to such person or persons, as the party of the first part* or his heirs, executors, etc., might direct, all necessary conveyances for the more full release of any dower or claim thereof in and to any lands of the party of the first part.

It is quite clear that the execution of this agreement by the defendant Mary Ann Brown, did not, in law, release or discharge her dower in her husband's lands. That could only

be accomplished by uniting with her husband in a conveyance to a third party. In so far as the instrument purported to release her claim of dower to her husband, the agreement of the wife was a nullity (*Carson* agt. *Murray*, 3 *Paige*, 483). And as it does not appear that, since her husband's death, the widow has executed any release of her right and interest in the land in question in this action, she is in law entitled to her dower.

But it is argued in opposition to the claim of the widow, that she accepted, and is in the enjoyment of, a pecuniary provision in lieu of dower, and that she is equitably estopped, by such agreement and the provision in question, from asserting any claim to dower in her husband's lands. The object of the husband in making the pecuniary provision, by the agreement of 1855, in favor of his wife, was to secure her comfortable support; that she might be maintained with the comforts and conveniences which she had theretofore enjoyed. This was assuredly his duty towards her, and there is nothing disclosed in the case, from which it can in any wise be inferred, that he could not have been compelled to do this had he refused, although they lived apart from each other. It is both a moral and legal duty imposed upon a husband to support his wife, and that with reasonable comforts and conveniences. This is all the argument in question professed to accomplish.

The defendant's counsel cites no case in support of this view that the widow is equitably estopped from asserting her claim to dower, by reason of the agreement and provision in question. On the other hand, there are cases which discountenance any such conclusion.

Dower is highly regarded in the law. It is a moral as well as a legal right. "This humane provision of the common law was intended for the sure and competent sustenance of the widow and the better education and nurture of her children (4 *Kent's Com.*, 36 [*marg.*]). The husband cannot defeat it by any act in the nature of alienation or charge without the

assent of the wife, given and proved according to law (*Revised Statutes, vol.* 1, 742, *sec.* 16 ; *Simar* agt. *Canaday,* 53 *N. Y.,* 298). That the same cannot be defeated by arrangements of the nature contemplated by the agreement between the parties of 1855, is shown by the following cases: *Townsend* agt. *Townsend* (4 *Sand.,* 411) ; *Day, administrator,* agt. *West* (2 *Edwd. Chy.,* 592) ; *Carson* agt. *Murray* (*supra*).

In *Crain* agt. *Cavana* (36 *Barb.,* 410) the wife had obtained a divorce in the court of chancery from her husband. Provision was made in the decree for the payment by the husband of a sum of money, to be applied towards the maintenance and support of the complainant and her infant daughter, "*in lieu and satisfaction of all alimony, dower, right of dower, and all other claims which she may or can have to the property of her husband.*" The court, MORGAN, J., at general term says: "The court of chancery had no authority to require a married woman, although a party, to accept a gross sum from her husband in lieu of, and in satisfaction of, her dower. And her release of dower to her husband, although voluntary, and duly acknowledged, and made in pursuance of such decree, would be a nullity, as she is legally incompetent to execute such an instrument to her husband, except in the single case authorized by the act of 1870" (*Laws of* 1870, *p.* 128). Courts of equity have properly hesitated from in any manner giving their sanction to separations of husband and wife by voluntary arrangement, such separations being regarded as contrary to the policy of the law, and against morality.

Agreements, however, entered into by the husband, for the payment of a specified sum for the support and maintenance of his wife, have been upheld and enforced. Such is the case of *Calkins* agt. *Long* (22 *Barb.,* 97), the reason for the conclusion being stated in an able opinion by MASON, J. (*Wallace* agt. *Bassett,* 41 *Barb.,* 92). But I do not find any instance in which it has been held, that the wife can release to her husband her dower rights, directly or indirectly.

Guidet agt. Brown.

On the other hand, as an indication of the regard the law has for the rights of the wife, it is believed that provision for the wife by deed of separation, does not necessarily affect her right to a share of the husband's personal estate under the statute of distribution, nor as affecting any other legal right to what she may be entitled on the death of her husband (*McQueen's Husband and Wife* [2d ed.], *p.* 381). And I am persuaded that it would be unwise to go beyond what has been decided in cases of this character. Nor should equity regard the wife as concluded from setting up her right to dower in his lands, upon the death of her husband, for the reason that she accepted from him, in his lifetime, a provision which he was under obligation to make for her support in comfort.

But it is further urged that the case comes within section 12 of title 3, part 1, chapter 1 of the Revised Statutes. The portion of the statute to which reference is made, is in these words, if "a pecuniary provision be made for her (the wife) in lieu of dower, she should make her election, whether she will take such pecuniary provision, or whether she will be endowed of the lands of her husband, but she shall not be entitled to both."

It is quite clear that in order to put the wife to such election, the pecuniary provision alluded to must, in some way, by last will or otherwise, be tendered to her at the death of her husband. In *Crain* agst. *Cavana* (*supra*), it was held, "that this equitable provision to bar dower must be a provision to take effect in possession or profit immediately on the death of the husband," and cases are cited to support this conclusion.

In the case under consideration the provision was made for the wife more than twenty years ago. The widow is now seventy-one years of age and upwards. And the provision made by the agreement must, in reason and experience, have been already largely exhausted for the support and maintenance of the wife, so that it does not appear that it is a present

Guidet agt. Brown.

provision tendered as to which, as her claim of dower, she is obliged to make an election.

The conclusion reached is that there should be judgment for partition of the lands, but that Mary Ann Brown is endowed of the lands in question.