LOUISE WINTER, Respondent, *v.* CHARLES WINTER, Appellant.

1. HUSBAND AND WIFE — CONTRACTS BETWEEN THEM — POWERS OF MARRIED WOMEN — DOMESTIC RELATIONS LAW (L. 1896, CH. 272, § 21). Any contract between husband and wife, at least without the intervention of a trustee, as well as every contract between the wife and any third person, was void at common law on the principle that the existence of the wife was merged in that of her husband and the unity was so complete that nearly all their legal rights depended upon it, but by legislation in this state, beginning in 1848 and culminating in the Domestic Relations Law (L. 1896, ch. 272, § 21), complete freedom of contract has been extended to married women with reference to every subject except the contract of marriage itself. A wife is now permitted to contract with the freedom of a *feme sole* and by the express command of the legislature she can contract even with her husband the same as if they were unmarried, except that they cannot alter or dissolve the marriage and she cannot release him from his obligation to support her.

2. SAME — VALIDITY OF CONTRACT FOR SEPARATE SUPPORT OF WIFE. Prior to the legislation which gave married women general power to make contracts, it was the law that if a husband and wife had actually separated, a valid agreement might be made, through the medium of a trustee, for an allowance from the husband to the wife for her support. Under similar circumstances, agreements of that nature are still valid, but the intervention of a trustee or third person is no longer necessary. In view of the legislation which permits husbands and wives to contract directly with each other, any contract for separation and support, which they could formerly have made by means of a trustee, they can now make without one.

3. SAME — CONTRACT PROVIDING FOR PAYMENT OF SUM OF MONEY TO WIFE IN LIEU OF SUPPORT AND MAINTENANCE — VALIDITY OF, UNDER DOMESTIC RELATIONS LAW (L. 1896, CH. 272, § 21). A contract between

a husband and wife, who had been for several years living apart and separate from each other, whereby they mutually agreed to continue to live separate and apart and the husband agreed to pay a certain sum each week to the wife for her support and maintenance, in consideration of which each of the parties agreed not to interfere with the rights or actions of the other, is valid, and an action on the part of the wife to recover from her husband money due thereunder is maintainable. The contract does not "relieve the husband from his liability to support his wife" in violation of section 21 of the Domestic Relations Law, since an agreement on his part to pay such a sum for the support of his wife as is satisfactory to her cannot be said to have that effect. She does not relieve him of his obligation when she accepts his promise to perform it and he does not forsake his duty when he agrees to discharge it to her satisfaction. She is the best judge of what she needs for her support and the amount may be fixed and settled by an agreement made after actual separation without violating any principle of law or any statute now in existence.

4. ACTION BY WIFE TO ENFORCE CONTRACT MAINTAINABLE IN COURT OF LAW. A contention, that even if the contract is valid, it can be enforced only in a court of equity is untenable; a married woman can now contract directly with her husband and is made "liable on such contracts as if she were unmarried," and hence, resort to equity is no longer necessary or reasonable. All courts are open to her and she can enter them with the freedom of a man. She can sue her husband on his promise to pay contained in the contract in question if she could sue him on his promise to pay in a promissory note. Courts of law now recognize the separate existence of a husband and his wife the same as courts of equity and give to each the same rights and remedies.

· *Winter* v. *Winter*, 115 App. Div. 899, affirmed.

(Submitted March 13, 1908; decided March 31, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 11, 1906, which reversed a judgment of affirmance by the Appellate Term of a judgment of the City Court of the city of New York dismissing the complaint, and granted a new trial.

The parties to this action are husband and wife, but they had lived separate and apart from each other for six years, when they entered into an agreement under their hands and seals, of which the following is a copy :

" Agreement made and entered into this 12th day of Decem-

ber, 1903, between Charles Winter, party of the first part, and Louise Winter, party of the second part, both of the County and State of New York.

" WHEREAS, the party of the second part now is and has been for several years past living apart and separate from the party of the first part, who is her husband, and,

" WHEREAS, differences have arisen between the parties, by which they hereby agree to and do mutually separate and live apart, and in consideration of the payments to be made, as hereinafter stated, by the party of the first part to the party of the second part, each of the said parties agree that neither of them or either of them will interfere with the rights, privileges, doings or actions of each other and will not interfere in any way, manner or shape with each other and each of the parties is at liberty to act and do as they see fit.

" The party of the first part agrees to pay to the party of the second part the sum of Five Dollars each and every week, which payment is for the support and maintenance of the party of the second part, payments to be made on Friday and Saturday of each week, the money to be sent to the address of the party of the second part by Post Office money order.

" The party of the first part also agrees to pay in addition to the Five Dollars weekly the sum of Two Dollars per week on account of the balance due the party of the second part, pursuant to an agreement heretofore made between the parties.

" In the event of the party of the second part in any way interfering with the party of the first part, such violation of this agreement shall have the effect of avoiding the obligations assumed by the party of the first part.

" In the event of the party of the first part being sick and unable to work so that he will not earn money to make his payments as herein agreed upon, then the party of the first part shall send to the party of the second part a doctor's certificate of such sickness, in which case the payments shall be delayed until the recovery of the party of the first part, and payments must be made up for such delay."

The balance due " pursuant to an agreement heretofore made between the parties," referred to in the foregoing instrument, accrued under an earlier contract, of which the following is a copy, seals and signatures being omitted:

" Agreement made this 10th day of April, 1900, between Charles Winter, party of the first part, and his wife, Louise Winter, party of the second part, both of the City of New York, as follows:

" WHEREAS, marital differences have, for a long time past, arisen between the respective parties hereto, and the parties having separated, and having lived separate from each other for a considerable length of time, and the respective parties having come to a mutual understanding, it is agreed as follows:

" That the party of the first part agrees to give to the party of the second part the sum of $5.00 per week, for the support and maintenance of the said party of the second part, payment to be made on each Tuesday, and commencing with the date of this agreement, payment to be made by Post Office Order to the party of the second part.

" The respective parties hereto further agree that each of them will not interfere with, bother, annoy or in any way or manner cause each other any trouble or annoyance in the future."

This action was brought by the wife in the City Court of the city of New York to recover from her husband the sum of $621.00, alleged to be due by virtue of the two instruments.

The answer admitted the execution of both contracts, but alleged among other defenses that they were illegal, null and void. Without taking any evidence, the complaint was dismissed at the trial upon the opening and the pleadings because, as the trial judge announced, " the contract is void in law and not enforceable." The judgment entered accordingly was affirmed on appeal by the Appellate Term of the Supreme Court, but reversed by the Appellate Division, one of the justices dissenting. The defendant obtained leave and appealed to this court.

*August P. Wagener* for appellant. The agreement upon which this action was brought, being made between husband and wife, without the intervention of a trustee, was absolutely void at law. (*Hendricks* v. *Isaacs,* 117 N. Y. 416; *Hungerford* v. *Hungerford,* 161 N. Y. 553.) The instrument upon which this action is brought, made between husband and wife, in view of their existing separation, whereby the husband agrees to pay the wife a certain sum of money for her support and maintenance, not being made with a trustee for the wife, is not sanctioned by the Domestic Relations Law, is void, and will not be enforced. (*Galusha* v. *Galusha,* 116 N. Y. 642; *Clark* v. *Fosdick,* 118 N. Y. 7; *Hungerford* v. *Hungerford,* 161 N. Y. 550; *Poillon* v. *Poillon,* 29 Misc. Rep. 666.) Even if the agreement could be enforced in an equity action, in a court having equity powers, as a case calling for an equitable intervention of the court, it was absolutely void, and was incapable of enforcement in this action, the City Court of the city of New York, in which the same was commenced, having no jurisdiction of actions in equity. (*Lawrence* v. *Lawrence,* 32 Misc. Rep. 503; *Dean* v. *Ry. Co.,* 119 N. Y. 547; *Hendricks* v. *Isaacs,* 117 N. Y. 416; *Poillon* v. *Poillon,* 29 Misc. Rep. 661; 49 App. Div. 341; *Whitney* v. *Whitney,* 4 App. Div. 598; *Blewitt* v. *Olin,* 13 N. Y. S. R. 76; *Gutman* v. *Rogers,* 13 N. Y. Supp. 891.)

*M. Strassman* for respondent. The agreement of separation was not contrary or in violation of the Domestic Relations Law. (*Maney* v. *Maney,* 119 App. Div. 541; *Gray* v. *Butler,* 116 App. Div. 816; *Reardon* v. *Woerner,* 111 App. Div. 259; *Dennison* v. *Dennison,* 52 Misc. Rep. 37; *Effray* v. *Effray,* 110 App. Div. 545; *Holihan* v. *Holihan,* 79 App. Div. 475; *Lawson* v. *Lawson,* 56 App. Div. 535; *Pettit* v. *Pettit,* 107 N. Y. 667; *Galusha* v. *Galusha,* 116 N. Y. 635; *Poillon* v. *Poillon,* 49 App. Div. 341.) The City Court possessed jurisdiction of the cause of action. (*Reardon* v. *Woerner,* 111 App. Div. 259; *Carling* v. *Carling,* 42 Misc. Rep. 492; *Maney* v. *Maney,* 119 App. Div. 541;

*Adams* v. *Adams*, 24 Hun, 401; *Granger* v. *Granger* 2
N. Y. S. R. 211; *Manchester* v. *Tibbetts*, 121 N. Y. 219;
*Orr* v. *Cushman*, 54 Misc. Rep. 123; *Crane* v. *Crane*, 46
N. Y. S. R. 569.)

VANN, J.   Any contract between husband and wife, at
least without the intervention of a trustee, as well as every
contract between the wife and any third person, was void at
common law.   This rule rested on the principle that the
existence of the wife was merged in that of her husband and
the unity was so complete that nearly all their legal rights
depended upon it.   In 1848 the legislature of this state began
very cautiously to sever the merger of identity and by 1862
had progressed so far as to permit a married woman to carry
on business and make contracts with reference to her separate
estate.   (L. 1848, ch. 200; L. 1860, ch. 90; L. 1862, ch. 172.)

Legislation continued to advance by gradual and seemingly
reluctant steps until in the course of half a century complete
freedom of contract was extended to married women with
reference to every subject except the contract of marriage itself.
The final act was the Domestic Relations Law, passed in 1896,
which provided that " a married woman has all the rights in
respect to property, real or personal, and the acquisition, use,
enjoyment and disposition thereof, and to make contracts in
respect thereto with any person including her husband, and
to carry on any business, trade or occupation, and to exercise
all powers and enjoy all rights in respect thereto and in respect
to her contracts, and be liable on such contracts, as if she were
unmarried; but a husband and wife cannot contract to alter or
dissolve the marriage or to relieve the husband from his lia-
bility to support his wife."   (L. 1896, ch. 272, § 21.)   This
section changed and codified many previous statutes, each of
which had advanced further than any of its predecessors toward
the complete commercial emancipation of married women.   We
cite some of the latest merely to illustrate the subject.   (L.
1892, ch. 594; L. 1890, ch. 248; L. 1884, ch. 381.)

The courts at first were more conservative than the legisla-

ture, and construed the various statutes with caution and con-
cern. They were not eager to extend, nor even at once to fully
recognize the innovations upon the common law repeatedly
made by the legislature, but at last most of the mooted ques-
tions, many in doubt for years, have been settled, although
we are now confronted by one which has long been under dis-
cussion in some of its phases, and which, owing to the diverse
action of the courts below, may still be regarded as open.
The Appellate Term apparently relied upon an earlier deci-
sion made by itself, which held that as the husband's duty of
support remains unchanged by statute, any agreement between
him and his wife, whereby that duty is limited to a specific
provision, tends to relieve him of his liability to support his
wife and to preclude all inquiry into the sufficiency of the
provision. This was regarded as opposed to the policy of
the state and as not sanctioned by the Domestic Relations
Law. The decision rests on original reasoning rather than
authority. (*Carling* v. *Carling*, 42 Misc. Rep. 492.)

On the other hand, the Appellate Division, while writing
no opinion in this case, based its judgment of reversal on its
opinion in *Effray* v. *Effray* (110 App. Div. 545). The argu-
ment in that case is that if the agreement to support were a
mere contract between a husband and wife, then living
together, to separate and live apart in the future, it would be
void as against public policy. As, however, the parties had
already separated and an action for a limited divorce was
pending, an agreement that the parties should continue to live
apart and that the husband should pay a certain sum for the
support of his wife is valid and can be enforced, even without
the intervention of a trustee. Reliance was placed upon
*Pettit* v. *Pettit* (107 N. Y. 677); *Galusha* v. *Galusha* (116
N. Y. 635) and *Lawson* v. *Lawson* (56 App. Div. 535).

In *Pettit* v. *Pettit* the parties had separated and an action
for a limited divorce was pending when they entered into an
agreement that provided for the wife's support through a
division of the husband's property, which was to be converted
into money, and after payment of his debts one-third of the

remainder paid over to her.   An examination of the record in that case, as it appears on our files, shows that the contract was directly between husband and wife, without the intervention of a trustee.   It recited that an action for a separation brought by the wife was pending, and that "the children of the parties have intervened and induced them to settle and compose all strife between them, and to mutually condone and forgive all past offenses by either against the other."   After providing for the sale and division of the husband's property, it concluded as follows: "It is further agreed that such payment being made, the said action shall be discontinued and the said Susan Pettit shall be deemed to have forgiven and condoned, finally and forever, all alleged offenses against her committed and done by said Asa Pettit contrary to his marital duty, and that they, said Susan and Asa Pettit, shall henceforward live apart and that such payment shall be deemed in full settlement and satisfaction of all claim on her part against him for support or maintenance for the rest of her life and in full of all claim for dower and thirds in his estate at his death."

The action was brought by the wife against the husband for the specific performance of the agreement on his part and the trial court, after finding the facts as stated, held "that the said agreement set forth in the complaint in this action is a good and valid agreement between the parties, made upon a good and sufficient consideration and that the same is not against public policy or void and should be enforced against the defendant."   The decree for specific performance was affirmed by the General Term and upon further appeal this court affirmed both judgments.   Judge FINCH, speaking for all the judges, said: "The questions remaining are as to the validity of the written contract and its force and effect.   It is claimed to be against public policy because by its terms the wife agrees to live separate and apart from her husband. In the pending action for divorce, the plaintiff would have been entitled, if successful, to a decree of separation and a suitable allowance from the estate of her husband, for her

support and maintenance. It is difficult to see how it could be in accord with public policy to award such relief and yet against public policy for the husband to concede it in advance of the decree and as a compromise of the existing litigation. Public policy does not turn on the question whether the husband fights out the quarrel to final judgment. Where the separation exists as a fact and is not produced or occasioned by the contract, the consideration of the husband's agreement to pay is his release from liability for the support of his wife. (*Calkins* v. *Long*, 22 Barb. 97; *Mann* v. *Hulbert*, 38 Hun, 27; *Carpenter* v. *Osborn*, 102 N. Y. 552)."

This case was relied upon in *Galusha* v. *Galusha* (*supra*) where an agreement resembling the one now before us, but made through the intervention of a trustee, was sustained as valid when made and held not to be invalidated by a subsequent violation of his marriage vow by the husband. It has been followed in many other cases, some of which arose since the passage of the Domestic Relations Law, which was held not to be violated by an agreement made directly between husband and wife after they had separated, whereby he agreed to pay her a certain sum every week for the support of herself, or herself and children. (*Clark* v. *Fosdick*, 118 N. Y. 7, 14; *Effray* v. *Effray*, 110 App. Div. 545; *Lawson* v. *Lawson*, 56 App. Div. 535; *France* v. *France*, 38 Misc. Rep. 459; *Taylor* v. *Taylor*, 32 Misc. Rep. 312.) Apparently it was not brought to the attention of the court in *Carling* v. *Carling* (*supra*), upon which the Appellate Term relied.

Agreements like the one considered in *Pettit* v. *Pettit*, and the one now before us, if made while the parties are still living together, are held void as against public policy where it is an essential part thereof that they should thereafter separate. (*Poillon* v. *Poillon*, 49 App. Div. 341; *Whitney* v. *Whitney*, 4 App. Div. 597; *Maney* v. *Maney*, 119 App. Div. 765.)

Prior to the legislation which gave married women general power to make contracts, it was the law that if the parties had actually separated, a valid agreement might be made

through the medium of a trustee for an allowance from the husband to the wife for her support. (*Carson* v. *Murray*, 3 Paige, 483, 500 ; *Calkins* v. *Long*, 22 Barb. 97 ; *Wallace* v. *Bassett*, 41 Barb. 92 ; *Guidet* v. *Brown*, 54 How. Pr. 409, 412 ; *Allen* v. *Affleck*, 64 How. Pr. 380, 382 ; *Mann* v. *Hulbert*, 38 Hun, 27, 30 ; *Walker* . v. *Walker*, 9 Wall. 743.) That this rule was well settled, although the courts followed it reluctantly, is well illustrated by the remarks of Chancellor WALWORTH in *Carson* v. *Murray* (*supra*) : " It may well be doubted," he said, " whether public policy does not forbid any agreement for a separation between husband and wife, except under the sanction of a court of justice ; and whether it does not also require that such agreements should be limited to those cases where by the previous misconduct of one of the parties, the other is entitled to have the marriage contract dissolved, either wholly or partially, by a decree of a competent tribunal. The late Lord Chancellor of England, the Earl of Eldon, expressed his opinion very plainly on this subject in the case of *Lord St. John* v. *Lady St. John* at the time he first held the Great Seal. (11 Vesey, 526.) He reiterated the same opinion sixteen years afterwards, in the case of *The Earl of Westmeath* v. *Countess of Westmeath* (Jacob's Rep. 126) and as late as 1830, in a subsequent suit between the same parties in the House of Lords, on an appeal from Ireland, he again took occasion to express his astonishment that the doctrine should ever have prevailed that parties to a marriage contract might, by an agreement between themselves, destroy all the duties and obligations of that important and sacred relation, not only as it regarded themselves, but their children also. (1 Dow & Clark's Rep. 544.) It has, however, long since become the settled law in England that a valid agreement for an immediate separation between a husband and wife and for a separate allowance for her support, may be made through the medium of a trustee. And as many of the decisions which have gone the greatest length on this subject took place previous to the Revolution, they have been recognized here as settling the law in this

state to the same extent. (*Baker* v. *Barney*, 8 Johns. 73 ; *Shelthar* v. *Gregory*, 2 Wend. 422 ; 2 Raithby's Vern. 386, n. 1.) * * * According to those cases, agreements for separations can not be supported, either at law or in equity, unless the separation has already taken place, or is to take place immediately upon the execution of the agreement. The contract will also be considered as rescinded, if the parties cohabit or live together as husband and wife, by mutual consent for ever so short a time. And the husband, in that case, should be restored to all his marital rights to the same extent as if no separation had ever taken place. Testing the agreement in this case by these principles, I can not see that there is anything in the contract, as proved, to render it invalid."

The Supreme Court of the United States gave expression to its views upon the subject through Mr. Justice DAVIS in *Walker* v. *Walker* (*supra*), all the justices concurring: " It is contended that deeds of separation between husband and wife can not be upheld, because it is against public policy to allow parties sustaining that relation to vary their duties and responsibilities by entering into an agreement which contemplates a partial dissolution of the marriage contract. If the question were before us, unaffected by decision, it would present difficulties, for it can not be doubted that there are serious objections to voluntary separations between married persons. But contracts of this nature for the separate maintenance of the wife through the intervention of a trustee, have received the sanction of the courts in England and in this country for so long a period of time that the law on the subject must be considered as settled," citing many cases.

The intervention of a trustee or third person is no longer necessary even for the conveyance of real estate, or the partition thereof with bar to dower and curtesy. (Dom. Rel. Law, § 26.) In view of the legislation which permits husbands and wives to contract directly with each other, any contract for separation and support, which they could formerly have made by means of a trustee, they can now make without one. The only reason for resorting to a trustee was the ancient rule that

a husband and wife were one person, but both the reason and the rule ceased to exist when the common law was supplanted by statute. A wife is now permitted to contract with the freedom of a *feme sole* and by the express command of the legislature she can at last contract even with her husband the same as if they were unmarried, except that they cannot alter or dissolve the marriage and she cannot release him from his obligation to support her. The old formality was necessary when the wife had no legal existence apart from her husband, who in contracting with her simply contracted with himself according to the theory of the law. That theory has been overthrown by statute and the opposite theory substituted, so that there is no longer any necessity for a trustee. Even twenty years ago when *Pettit* v. *Pettit* was decided, no trustee was required, and indeed that case seems to control this in every respect, unless a distinction may be founded on the Domestic Relations Law, or on the fact that no action for a separation was pending in this case, although there was in that.

The pendency of such an action was not regarded as material in the cases which sustain agreements for a separation through a trustee, for in many of them no suit had been brought and none was in contemplation. The mere pendency of an action undetermined and untried, proves nothing, except that the parties disagree and that one or both claim just grounds therefor, all of which is necessarily implied from the making of the agreement after a separation has actually taken place. It affords no sanction of a court and calls for no approval by public authority. It furnishes no consideration for the agreement, which is supported by the mutual promises of the parties thereto. It protects no interest of either party, or of the state, and to found a distinction upon it would elevate form above substance.

Does the contract in question "relieve the husband from his liability to support his wife" in violation of the Domestic Relations Law? An agreement by the husband to pay such a sum for the support of his wife as is satisfactory to her, can-

not be said to have that effect. (*Reardon* v. *Woerner,* 111 App. Div. 259.) In *France* v. *France* (*supra*) it was stated that the contract does not alter or dissolve the marriage nor relieve the husband from his liability to support his wife, but rather insures the fulfillment of that liability; or, as it was put in *Effray* v. *Effray,* it is "in compliance with that duty and in furtherance of his obligations in that regard." If it should turn out that the provision for the support of the wife was inadequate and that she accepted it unadvisedly and imprudently, a court of equity has power to set it aside upon restitution to the husband of so much of the consideration as the wife had not already expended for her own support. (*Hungerford* v. *Hungerford,* 161 N. Y. 550.)

The clause in question was not intended to change, but to preserve the law as it previously existed and to prevent the broad powers committed to the wife by the forepart of the section to make any contract "with any person, including her husband," from opening the door so wide that she could release her husband from his liability without any adequate provision for her support being made by him. She does not relieve him of his obligation when she accepts his promise to perform it and he does not forsake his duty when he agrees to discharge it to her satisfaction. She is the best judge of what she needs for her support and the amount may be fixed and settled by an agreement made after actual separation without violating any principle of law or any statute now in existence.

It is contended, although the question was not raised at the trial, that even if the contract is valid, it can be enforced only in a court of equity, but since a married woman can now contract directly with her husband and is made "liable on such contracts as if she were unmarried," resort to equity is no longer necessary or reasonable. (Dom. Rel. Law, § 21.) She now "appears, prosecutes or defends alone, or joined with other parties, as if she were sole." (Code Civ. Pro. § 450.) All courts are open to her and, she can enter them with the freedom of a man. She can sue her husband on his

promise to pay contained in the contract in question if she could sue him on his promise to pay in a promissory note. Courts of law now recognize the separate existence of a husband and his wife the same as courts of equity and give to each the same rights and remedies. (*Manchester* v. *Tibbetts,* 121 N. Y. 219, 222.)

The order of the Appellate Division should be affirmed and judgment absolute rendered against the defendant on his stipulation, with costs in all courts.

Cullen, Ch. J., Haight, Werner, Willard Bartlett, Hiscock and Chase, JJ., concur.

Ordered accordingly.