# CASES REPORTED WITH BRIEF SYLLABI

## AND

# DECISIONS HANDED DOWN WITHOUT

# OPINION.

---

### SECOND DEPARTMENT, JUNE, 1921.

ROBERT J. HOCK, as Sole Surviving Executor, etc., of CAROLINE C. HOCK, Deceased, Respondent, *v.* FREDERICK B. HOCK, Individually and as Executor, etc., of ROBERT B. HOCK, Deceased, Appellant, and Others, Defendants.

*Mortgages — consideration — mortgage to wife — tolling Statute of Limitations — indorsement of payments of interest.*

Appeal by the defendant, Frederick B. Hock, individually and as executor, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Orange on the 21st day of February, 1921, upon the decision of the court rendered after a trial at the Orange Special Term. [See 196 App. Div. 905.]

Judgment affirmed, with costs. No opinion. Blackmar, P. J., Rich, Putnam and Jaycox, JJ., concur; Mills, J., reads for reversal and a new trial.

MILLS, J. (dissenting): The action was brought by the executor of the will of Caroline C. Hock to foreclose a certain mortgage for the sum of $10,000, given by said Robert B. Hock and wife on October 1, 1891, to Andrew J. Moore, and upon that same day assigned by the latter to the said Caroline C. Hock, the said wife. By its terms the mortgage, with the accompanying bond by Mr. Hock alone, was to come due in three years and to bear interest at the rate of five per cent. Caroline C. Hock died on February 10, 1913, leaving a last will, which was shortly thereafter duly probated, by which she divided her estate between their four children, of whom the plaintiff is one. Robert B. Hock died on December 20, 1919, leaving a will by which he gave his estate to the appellant individually, who had lived with and aided his father for some years in running the hotel, which was known as the Saint Elmo Hotel, situated near the railroad station at Goshen. The defendants are the son Robert, individually and as such executor, and also the other said children. The answer set up as defenses: (a) That the bond and mortgage were given without any lawful or valid consideration; (b) payment, and (c) that the cause of action, if any, is barred by the twenty-year Statute of Limitations. The contest at the trial was as to the first and last of those defenses. There really was no conflict in the evidence as to the material facts, which are the following: The said

Robert B. Hock for many years, even far back of the giving of the mortgage up to the time of his death, owned and operated that hotel. His wife lived with him there and was his efficient helper in the conduct of that business. No actual consideration for the alleged mortgage obligation passed from the mortgagee to the mortgagor at the time of its execution, or then existed between them. The papers were all executed the same day, and with the intent merely of the giving by the husband of the mortgage to his wife. That form of procedure was adopted very likely in accordance with the old practice, although it was not necessary at that time to follow it. Under chapter 381 of the Laws of 1884, the then latest married woman's enabling act, the covenant to pay could have been made directly by husband to wife. The strong probabilities from the circumstances proven point to the fact that the husband gave the bond and mortgage in consideration of her said services rendered and to be rendered to him. The bond as produced and put in evidence bears certain indorsements in the handwriting of the wife. Those purport by their dates to have been made on the first of April and the first of October in each year, the interest due dates, up to the 1st of April, 1896, and thereafter each year on April first up to and inclusive of April 1, 1911; and they appear to be of the several amounts of interest due upon those dates respectively. The last one, therefore, purports to have been made less than two years before the death of Mrs. Hock, or a little more than nine years before the commencement of this action, which was on April 5, 1920. If there had been no payment of interest later than April 4, 1900, then of course the action was barred by the Statute of Limitations. The learned trial justice made a very brief decision which, as to the said issues in controversy, found simply: (a) That the bond and mortgage were given for a valuable consideration; and (b) that interest thereon was paid according to its terms up to April 1, 1911. To those findings appellant duly excepted; but the record shows no request to find to the contrary made in appellant's behalf. While the absence of such request is unusual in so important a case, I suppose that appellant's exceptions preserve his contentions for our review here. The learned trial justice, in whose judgment I have great confidence, wrote a somewhat extended opinion, in which he held as follows, viz.: (a) That the evidence was sufficient to show that the bond and mortgage were given by the husband to the wife for her valuable services to him in running his hotel, and constituted his promise to pay her that amount therefor; (b) that such promise was a competent one for him to make, evidently meaning that it constituted a valid and enforcible express agreement upon his part; (c) that, as the instruments were under seal, it was unnecessary to determine what their actual consideration was, because the seal presumed a valuable consideration, which presumption defendants had not rebutted; (d) that the interest indorsements by Mrs. Hock, having of course been made in her lifetime before the Statute of Limitations could have run, were against her interest and, therefore, competent evidence of such payments, and (e) that the possibility that those indorsements may have been made by her so early that they would not prevent the bar of the statute is too remote to be seriously

considered, and, therefore, they are evidence that the payments purported to be indorsed were made respectively at their purported dates. The appellant here challenges the correctness of each of those conclusions except the first, and upon his contrary contentions to them rests his appeal here. Appellant's learned counsel, both orally and in his brief, argued most interestingly and, at least to my mind, conclusively that even now, under the present enlarged married woman's enabling acts her services in her husband's household and in aiding him in the conduct of his business, e. g., upon his farm or, as here, in his hotel, belong to the husband; and that, therefore, their rendition, past or future, constitutes no valuable or valid consideration for his promise to pay her for them; and that such a promise is merely one to make her a gift, and that the fulfillment of that promise, if made, constitutes only a gift. It seems to me that the authorities which he cites and his reasoning are alike conclusive in support of his proposition. The leading cases upon this point appear to be *Coleman* v. *Burr* (93 N. Y. 17) and *Blaechinska* v. *Howard Mission & Home* (130 id. 497). The former case arose under the enabling act of 1860,* which was much less liberal than that of 1884, the one in force when these instruments were given. That case arose between the creditors of the husband and the wife, to whom he had made a deed in consideration of his agreement to pay her at the rate of five dollars a week for taking care of his infirm mother as an inmate of his home. The decision was that neither the agreement nor the rendition of the services constituted a valid consideration for the deed. That case, however, is of little real value here, except as emphatically stating the general common-law rule. The latter, the *Blaechinska*, case, however, considered the effect of the act of 1884, which is really, as to this matter, the same as the present law, namely, section 51 of the Domestic Relations Law, in that it permitted a wife to contract even with her husband.† That case held that even that authority did not alter the said common-law rule, and that still " the consequential damages for loss of her services, both in the house and as seamstress [she having worked for her husband as such], could be recovered only in a separate action brought by her husband in his own name." The opinion upon this point says (p. 502): " The enabling statutes do not relieve a wife of the duty of rendering services to her husband. While they give her the benefit of what she earns, under her own contracts, by labor performed for anyone except her husband, her common-law duty to him remains and if he promises to pay her for working for him, it is a promise to pay for that which legally belongs to him. The fact that he cannot require her to perform services for him outside of the household does not affect the question, for he could not require it at common law. Such services as she does render him, whether within or without the strict line of her duty, belong to him. If he pays her for them, it is a gift. If he promises to pay her a certain sum for them, it is a promise to

---

* Laws of 1860, chap. 90.— [REP.

† See Laws of 1892, chap. 594; Gen. Laws, chap. 48 (Laws of 1896, chap. 272), § 21; Consol. Laws, chap. 14 (Laws of 1909, chap. 19), § 51.— [REP.

make her a gift of that sum. She cannot enforce such a promise by a suit against him." There is really no difference in this respect between the case of a promissory note (*Whitaker* v. *Whitaker*, 52 N. Y. 368) and this case of a bond and mortgage; because in the former the note expressly acknowledged a valuable consideration, while in the latter the bond, by the presumption of its seal, impliedly makes the same acknowledgment. The case of *Winter* v. *Winter* (191 N. Y. 462), cited by the learned counsel for the respondent, reviewing the various married woman's enabling acts, declares her full present capacity to sue her husband upon any claim which she may have against him; but does not at all indicate that she has against him any valid claim for her personal services to him in his household or business, or that his promise to pay her for them is enforcible as having been made upon a valuable consideration. The case of *Stevens* v. *Cunningham* (181 N. Y. 454, 462) construed to the same effect the statutory provisions as to the wife's right to her own wages, salary, etc. My conclusion, therefore, in the case at bar is that the husband's promise to pay his wife $10,000 for her services to him in his hotel business did not constitute a valuable consideration for the bond and mortgage in suit, and, therefore, that they were not enforcible, if that were the real consideration for them. I conclude also that the learned trial justice, if, as his opinion indicates, he was convinced that such promise was the consideration, should have so expressly found; and that his evident view that such consideration constituted a valuable and sufficient one was mistaken. It seems to me, moreover, that from that view as stated by him the fair inference is that, in later saying that defendant had not rebutted the presumption of consideration afforded by the seal, he meant merely that the above-stated promise was in itself a sufficient consideration. Otherwise his two stated views were inconsistent, the one with the other. As to appellant's other contention, which appears to be that while the interest indorsements, having been made within the lifetime of Mrs. Hock and, therefore, within the twenty-year period and before the Statute of Limitations had run, were competent as evidence, they were not evidence as to the time within the period of her life when they were respectively made. The argument of his counsel is that such indorsements are competent evidence when they appear upon their face, or are otherwise proven, to have been made at a time when their making was against the interest of the party making them. Here he contends that it might well have appeared to Mrs. Hock to be in her interest to date the indorsements as late as she did date them, even though the payments were actually made long before; and, therefore, he argues that they are evidence as to date merely to the extent that they were made at some time in her lifetime after the creation of the bond, and so may all have been made before April 4, 1900, and if so then the statute had run before the action was commenced on April 5, 1920. It seems passing strange that this particular contention of appellant's counsel appears not to have been expressly passed upon in any decision to which our attention is called by either counsel. Several cases cited by them hold the general proposition that such indorsements, if appearing or proven to have been made before the statute had run, are

competent proof of the fact of the payments as indicated by them; but the matter of dates does not seem to have been expressly considered. The learned trial justice, in his opinion upon this point, seems to have relied especially upon *Mills* v. *Davis* (113 N. Y. 243). That case, however, was decided in the Court of Appeals solely upon the question of the effect of section 829 of the Code of Civil Procedure in making certain testimony incompetent. The opinion below cites also *Van Name* v. *Barber* (115 App. Div. 593), Mr. Justice RICH writing. In that case the action was commenced June 20, 1905; the last debit charge was made August 27, 1898, and hence, in the absence of any credit entry, the claim for goods sold and delivered would have been outlawed August 27, 1904. There were upon the deceased merchant's books several credit entries made by him, the last being dated June 26, 1899. The creditor died February 18, 1900. If the last payment was made at the date of that credit entry, the statute would not have run when the action was commenced; but if it had been made at any time between August 27, 1898, and June 20, 1899, then it would not have prevented the running of the statute. We upheld the plaintiff's recovery, but our opinion did not notice this distinction here attempted to be made. The recent case of *Roe* v. *Mills* (223 N. Y. 623) is also cited by appellant's counsel, who states that this point was not therein considered. That case is reported in brief memorandum only in the Court of Appeals, and merely by the bare decision upon our part in 174 Appellate Division, 886. That was an action to recover upon a demand promissory note for $1,475, given by defendant's intestate on January 2, 1908. Action was commenced July 12, 1915, after the death of both parties. It had then been outlawed since January 2, 1914, unless a payment of $100, indorsed upon it in the handwriting of the payee under the date of April 8, 1911, had the effect of making the statute run from that date. I was a member of this court in making that decision, and I recall our consultation upon the case, and that we did consider this very point. Assuming that the appellant's contention there made, that the indorsement was no proof of the date of the purported payment, "but that, to establish that fact, there must be some independent proof more than the writings," we took the view that in that case the paper did present that additional independent proof because the amount of that payment of interest could not have accrued six years before the payor's death, and it could fairly be presumed that the interest was not paid before it was due. Of course, if the statute had not run at the time of the payor's death, September 11, 1914, the right of action upon the note was thereby extended eighteen months by section 403 of the Code of Civil Procedure. I perceive some force in this claim of appellant's counsel, but it would seem that the same reasoning in which we indulged in that case is applicable to this. Assuming that the indorsements are evidence that the purported payments were made at some time during the life of the holder of the bond and mortgage, corresponding to the payee of the note, their amount is such that some of them must have been made within the period of twenty years before the commencement of this action, provided they were not made until due. My conclusion upon the whole

case, therefore, is that the action should go back for a new trial for a determination as to the exact consideration upon which the bond and mortgage were given. Therefore, I advise that the judgment appealed from be reversed and a new trial granted, with costs to abide the event.