In the Matter of the Estate of JAMES F. TIERNEY, Deceased.

Surrogate's Court, Bronx County, July, 1933.

*Hartman, Sheridan, Tekulsky & Pecora* [*Daniel J. Madigan* of counsel], for the widow, objectant.

*Samuel B. Goodman,* for the executrix.

*Louis Susman,* special guardian.

HENDERSON, S. The testator's widow objects to the account of the executrix on the grounds that it does not set forth the widow's right to share in the estate, and that a payment of $700 was improperly made to an alleged creditor who had no proper or valid claim.

The testator died on December 12, 1931, leaving a will dated November 11, 1929, and a gross estate of $2,309.20 in personalty only. He was survived by his wife, whom he had married on September 16, 1930, and by his mother, who is his sole next of kin, the executrix of his will and one of the legatees thereunder.

The widow asserts that the decedent's will was revoked as to her by their marriage after its execution, and claims his entire net estate as her intestate share under the statute. (Dec. Est. Law, § 83, subd. 3.)

Section 35 of the Decedent Estate Law expresses the statutory presumption of such *pro tanto* revocation and limits the evidence by which it may be rebutted. Various amendments have been made to this statute since its first appearance in the Revised Statutes. Determination of the effect of the marriage upon the will is controlled by the law in existence at the date of the decedent's death — not at the date of his will nor at the date of their marriage. (*Matter of Gaffken*, 197 App. Div. 257, 259; affd., 233 N. Y. 688; *Matter of Dexter*, 116 Misc. 17, 19.) The statute then read:

" § 35. Revocation by marriage. If after making any will, such testator marries, and the husband or wife, or any issue of such marriage, survives the testator, such will shall be deemed revoked as to them, unless provision shall have been made for them by some settlement, or they shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and such surviving husband or wife, and the issue of such marriage, shall be entitled to the same rights in, and to the same share or portion of the estate of said testator as they would have been, if such will had not been made. Such husband or wife or issue of any such marriage shall be entitled to such share or portion of the estate from the devisees and legatees in proportion to and out of the parts devised and bequeathed to them by such will. No evidence to rebut such presumption of revocation shall be received, except as herein provided."

The widow was not provided for in the will nor was she in any way mentioned therein. No provision was made for her by any settlement, unless the making thereof can be established from the text of a separation agreement executed by the testator and his wife on February 10, 1931, which, except for the usual first and last paragraphs, reads:

" WHEREAS, the parties hereto were married on or about the 16th day of September, 1930, and ever since said time have been and now are husband and wife; and

" WHEREAS, divers disputes and unhappy differences have arisen between the parties hereto, and

" WHEREAS, the parties hereto have been and are unable to adjust and reconcile their said disputes and differences and are unable to live together in peace and harmony;

" *Now, therefore,* in consideration of the premises, the mutual promises and agreements herein made, and the sum of One ($1.00) Dollar, by each party to the other paid, the receipt whereof is hereby acknowledged, the parties hereto respectively promise, covenant and agree as follows:

" *First.* It shall be lawful, and it is agreed that the party of the second part at all times hereafter shall live separate and apart from the party of the first part, and be free from his control and authority, and without and free from any control, restraint or interference direct or indirect from the party of the first part in all respects as if the party of the second part were single and unmarried; and it shall be lawful and it is agreed that the party of the first part shall live separate and apart from the party of the second part and be entitled to all the other provisions of this paragraph in like manner as the party of the second part.

" *Second.* Neither of the parties hereto shall annoy nor instigate another to annoy the other, nor compel nor seek to compel the other to cohabit or dwell with him or her by legal or other proceedings, or by proceedings brought for restitution of conjugal rights, or by any other acts or deeds, whether done directly or indirectly during the joint lives of the parties.

" *Third.* The party of the second part shall enjoy and own free and independent of any claim of the party of the first part all personal property which she owned prior to the marriage of the parties hereto, and all personal property now belonging to her or in her home or in her possession and control, and all property which she may hereafter own or which may hereafter belong to or come to her, and other chattels which have heretofore been given to her by the party of the first part, and she shall have full power to sell, assign, convey, deal with, bequeath or otherwise dispose of said property and all of same in her lifetime or by her last will and testament, as fully and effectively as if she were single and unmarried.

" *Fourth.* The party of the first part shall likewise own and enjoy independent of any claim of the party of the second part, all property, both real and personal, now held or owned by him and in his possession and control, or which shall hereafter belong to or come to

him, and he shall have full power to sell, assign, convey, deal with, devise, bequeath or dispose of the said property in his lifetime or by his last will and testament as fully and effectively as if he were unmarried.

" *Fifth.* The party of the second part agrees to waive and does hereby waive all her rights to support and maintenance against the party of the first part for and in consideration of the sum of $500.00, lawful money in hand paid by the party of the first part to the party of the second part, receipt of which is hereby acknowledged; the said party of the second part releases and forever discharges, and by these presents does release and discharge the party of the first part from all manner of action and actions, cause and causes of actions, suits, debts, controversies, claims and demands whatsoever in law or in equity, which the said party of the second part now has or which she may have hereafter.

" *Sixth.* The parties hereto covenant and agree that they will execute any and all conveyances, releases or other instruments, and do such other acts as may be necessary to carry out the provisions hereof."

Apart from the will the only proof necessary, or permitted, to establish the absence of presumed testamentary neglect or of presumed intentional revocation, or the presence of testamentary conception, and thereby to rebut the statutory presumption that the decedent's will was revoked as to his widow, is evidence that the testator had made a provision for her by some settlement. (Dec. Est. Law, § 35, as effective on December 12, 1931; *McLean* v. *McLean,* 207 N. Y. 365, 373.)

The executrix and the special guardian for infant legatees submit this document as evidence of such a provision. The widow contends that the agreement is invalid and without effect, because the parties thereto had not separated prior to its execution and it purported to relieve her husband from his liability to support her.

It does not appear that the agreement has been set aside, that any application for such relief has ever been made, or that the agreement has ever been previously questioned or violated in any respect.

At the time it was executed the parties were, and for ten days prior thereto had been, registered at, and assigned to one room of, a hotel in New York city. Immediately after the execution of the instrument, and with no intervening time, the parties separated and have since lived apart. There is some evidence that the decedent visited his wife and remained over night on several separate occasions in an apartment occupied by her and another woman. This fact, alone, is insufficient to sustain the further contention of the widow that there was mutual repudiation or abandonment or

annulment of the agreement. (*Brody* v. *Brody*, 190 App. Div. 806; *Hughes* v. *Cuming*, 36 id. 302, 308; revd. on other grounds, 165 N. Y. 91.)

The statutory provisions with respect to contracts between husbands and wives are found in section 51 of the Domestic Relations Law, of which only the last clause in the first sentence is now pertinent: " but a husband and wife can not contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife."

A somewhat similar statute containing a prohibition to like effect (Laws of 1892, chap. 594) was first enacted during a course of legislative liberalization of the rights of married women. By such enactment it " was not intended to change, but to preserve the law as it previously existed." (*Winter* v. *Winter*, 191 N. Y. 462, 474.) Its purpose was not to destroy or deny rights of contract which had been long recognized by our courts. (*Effray* v. *Effray*, 110 App. Div. 545, 547; *Fives* v. *Fives*, 122 Misc. 657, 660.) This legislation in 1892, however, did give statutory approval to the validity of contracts made between spouses without the intervention of a trustee. (*Winter* v. *Winter*, *supra*, 472.)

It is proper, therefore, to consider relevant decisions made prior to that enactment as well as those handed down subsequently. The cases holding that a written separation agreement executed before the parties thereto had separated, is void, are based on various circumstances, such as that the separation occurred some appreciable time after the agreement; that the agreement was the procuring cause of, or consideration for, the separation; that the essential part of the agreement was that the parties should thereafter separate or should separate upon the happening of some future event; that the mutual agreements to separate were the only consideration for, and the only covenants in, the agreement; or that the agreement produced a destruction of the home. There is no indication of any such fact in the matter before me.

It has been repeatedly held that a separation agreement entered into after the parties had separated, is valid, and that it neither contravenes public policy which seeks to keep the home and the marital relationship intact (*Galusha* v. *Galusha*, 116 N. Y. 635, 642; *Pettit* v. *Pettit*, 107 id. 677, 679; *Hughes* v. *Cuming*, *supra*), nor violates the statute which prohibits contracts to alter the marriage or to relieve the husband from his liability to support his wife. (*Winter* v. *Winter*, *supra*; *Matter of Hughes*, 225 App. Div. 29, 31; affd., 251 N. Y. 529.)

In my opinion there is no such legal, moral, social or material distinction as the courts should recognize, between a separation

immediately followed by the written agreement, and a written agreement immediately followed by the public separation. In each set of circumstances, the open or public separation is, in all probability, the culmination of considerable thought and conference, and the document merely records the previous oral stipulations of the parties. In either situation there is not much doubt that, prior even to the oral arrangements, there has been an actual separation in the marital relationship, in private if not in public. This view is sustained by authoritative decisions, for it has also been held, both on the principle of *stare decisis* and on well-considered reasoning, that a written separation agreement, executed immediately prior to the open or public separation of the parties, is valid. (*Clark* v. *Fosdick*, 118 N. Y. 7, 12, and cases therein cited; *Carson* v. *Murray*, 3 Paige, 483, 501; *Leary* v. *Leary*, 136 Misc. 13; *Marks* v. *Marks*, 127 id. 416; *Fives* v. *Fives, supra; Landes* v. *Landes*, 94 Misc. 486, 499; affd., 172 App. Div. 758.)

The specific agreement by the objectant to release the decedent from his liability to support her violates neither public policy nor the statute, but is the consideration for his payment to her of the specified gross sum which she deemed necessary for her support until his death under the existing circumstances of his finances and resources. (*Winter* v. *Winter, supra*, 470, 473; *Galusha* v. *Galusha, supra*, 643; *Tirrell* v. *Tirrell*, 190 App. Div. 463, 468; revd. on ground that amount was inadequate and inequitable, 232 N. Y. 224; *Cain* v. *Cain*, 188 App. Div. 780, 782.) It has been said that the wife, because of her peculiar knowledge of the circumstances, is the best judge of the amount to be paid for her support and of the manner in which it should be paid. Notwithstanding such judicial equalization of the sexes, the entire agreement may be set aside because the amount paid or to be paid is inadequate or inequitable or because of other reasons that appeal to equity. (*Tirrell* v. *Tirrell*, 232 N. Y. 224, 229; *Hungerford* v. *Hungerford*, 161 id. 550; *Matter of Warren*, 207 App. Div. 793, 797; *Harding* v. *Harding*, 203 id. 721; affd., 236 N. Y. 514; *Perrin* v. *Perrin*, 140 Misc. 406, 413.) Until it is set aside, however, it remains a valid and enforcible agreement. (*Rosenblatt* v. *Rosenblatt*, 209 App. Div. 373; *Matter of Warren, supra; Cain* v. *Cain, supra*.)

Despite such an agreement to accept a stipulated amount in lieu of more or less precarious support, or any other act by a wife resulting in the release of her husband's liability to her, he remains liable to the State for her support during his life, to the extent, at least, of preventing her from becoming a burden to the public. (*Harding* v. *Harding, supra; City of New York* v. *McCarthy*, 139 Misc. 746; affd., 257 N. Y. 567.) As to the individual and personal right

of a wife to claim support, however, she may legally contract with her husband concerning the manner in which he is to perform his obligation (*Matter of Burridge*, 261 N. Y. 225, 227), or he may be relieved therefrom by her mere refusal, without legal justification, to live with him. (*Mirizio* v. *Mirizio*, 212 App. Div. 524, 527; affd., 242 N. Y. 74, 82; *Wirth* v. *Wirth*, 184 App. Div. 643.)

I hold that the agreement is valid. Hence it becomes necessary to determine whether or not it is such a " settlement " by which " provision " is made for the widow, as will rebut the statutory presumption of a revocation as to her.

By the last amendment to section 35, the indefinite term, " some settlement," was replaced by the specific description, " an ante-nuptial agreement in writing," and the statutory presumption of the *pro tanto* revocation of a will by the testator's subsequent marriage is no longer applicable unless the will was executed prior to September 1, 1930, by a person dying on or after March 28, 1932, and survived by the spouse of such subsequent marriage. (Laws of 1932, chap. 459.) Relief for the similarly situated spouse of a testator whose will is executed after August 31, 1930, is now provided for in another statute (Dec. Est. Law, § 18). The testator died prior to this amendment of 1932. There is no indication of any legislative intent that it should be retroactive in that respect. On the contrary, the Legislature has expressly limited its application as above noted. It is, therefore, not applicable to the decedent's will. (*Matter of Miller*, 110 N. Y. 216, 223; *Dodin* v. *Dodin*, 16 App. Div. 42, 44; affd., 162 N. Y. 635; *Matter of White*, 112 Misc. 433, 436.)

At the time of the testator's death the statute was silent as to the extent of the " provision " and the nature of the " settlement " except to characterize the latter as " some " settlement. That silence has been maintained from the inception of similar legislation until the amendment above mentioned and still remains in the statute providing for revocation as to after-born children. (Dec. Est. Law, § 26.) With respect to the " provision " in each statute, the legislative silence is still unbroken.

The " settlement " need not be of any particular kind and the " provision " need not be vested, certain or adequate, but there should be some future provision made by some act of the testator outside his will in the absence of any testamentary mention of, or provision for, the surviving spouse. (*McLean* v. *McLean, supra; Matter of Froeb*, 143 Misc. 660, 664; *Matter of Brant*, 121 id. 102, 104; *Matter of Backer*, 148 id. 318.)

In 1827 the Legislature enacted into statute (2 R. S. pt. 2, chap. 6, tit. 1, art. 3, § 43), effective in 1830, the principle of the civil law followed by the Ecclesiastical Courts of England, that a man did not

intend to have his will take effect if his family situation was changed by both his marriage and the birth of a child after the execution of his will. Prior to that legislation it had been held in this State that a man, by his marriage and parenthood, must have intended a revocation of his will made before he contracted both such new family relations and thereby assumed moral duties, because he must have meant to discharge such duties, and that a presumed revocation of his will flowed from such subsequent marriage and parenthood. (*Brush* v. *Wilkins*, 4 Johns. Ch. 506, 516.)

This statute and one providing for the revocation of a woman's will upon her subsequent marriage have been amended from time to time until they have reached their present expression of the *pro tanto* revocation of a man's or a woman's will upon either a subsequent marriage or a subsequent parenthood in two separate statutes, one for the benefit of surviving after-born children and the other for the benefit of the surviving after-wed spouse. (Dec. Est. Law, §§ 26 and 35.)

These statutory provisions are also based on a strong presumption of a testamentary oversight or an unintentional neglect of the testator to provide for the welfare of the natural objects of his bounty after his death. (*Tavshanjian* v. *Abbott*, 200 N. Y. 374, 378.) Their fundamental object is to guard and provide against such testamentary thoughtlessness and lack of vision as prevent a testator from contemplating the possibility of his marriage or of his parenthood subsequent to the execution of his will, and from taking such possibility into account when planning the testamentary disposition of his property. (*McLean* v. *McLean, supra*, 371.) The law now presumes that a possible change of status by marriage or by parenthood was not in the mind of the maker of an antenuptial will. (*Matter of Del Genovese*, 169 App. Div. 140, 144.) The principle of the civil law and the reason for the statute are both based on reason, justice, equity and human experience. The basis, the object and the presumption of both the principle and the statute, whether under the current theory of testamentary neglect and thoughtlessness or under the older doctrine of intended revocation, justify the conclusion that the " provision " by " settlement'," as well as that by testament, must be for a period after the testator's death and not prior thereto, and must be made for the widow and not for the wife. This conclusion is further sustained by the language and the intendment of the statute itself. The pronoun " them " in the statutory phrase " unless provision shall have been made for them by some settlement," obviously and necessarily refers only to the preceding " husband or wife or any issue " who " survives the testator."

The fact that a separation agreement was entered into goes a long way toward the rebuttal of the presumption that the testator forgot to provide for a " natural object of his bounty," but it cannot rebut the statutory presumption of partial revocation unless it contains a provision for his widow after his death. The failure of the reason for the statute cannot, alone, defeat the statute which expressly limits the evidence that may be received in rebuttal.

The sum of $500, paid by the decedent and received by his wife, as set forth in the instrument, was the consideration for his release from further liability to her for her support during his life. This payment was not, nor was any part thereof, a provision for the widow after his death. Proof of a " provision " outside the will, without a further showing that it is intended to be effective, in whole or in part, after the settlor's death, cannot be conscientiously held sufficient to support a finding that the settlor thereby demonstrated any thought for the welfare of a natural object of his bounty, or any absence of testamentary neglect to insure her sharing in the distribution of his estate, or the possession of testamentary conception, or that he thereby disclosed his intention not to revoke his ante-nuptial will. The statutory presumption has not been rebutted and the decedent's will was, therefore, revoked, as to his widow, by their marriage. She is, therefore, entitled to the entire net estate (Dec. Est. Law, § 35 and § 83, subd. 3), unless she has voluntarily relinquished her rights.

It is urged that she has released all her rights in the estate by reason of the provisions of the separation agreement, above quoted.

There can be no doubt from the language of that instrument that the parties thereto intended to place themselves in the same position with respect to their individual property rights as they would be if each were single and unmarried. The wife's agreements that her husband " shall have full power to * * * dispose of the said property * * * by his last will and testament as fully and effectively as if he were unmarried," and that she " will execute any and all * * * releases * * * necessary to carry out the provisions " of the instrument, can surely have no less effect than a release of all her rights in the decedent's estate. She has thereby barred herself from sharing in his estate and has released all the rights therein which were granted to her by the statutes (Surr. Ct. Act, § 200; Dec. Est. Law, § 83, subd. 3), as they existed at the date of his death. (*Matter of Burridge, supra,* 229; *Matter of Wylie,* 187 App. Div. 840; *Matter of Klein,* 121 Misc. 568; *Matter of Hagen,* 119 id. 770; affd. on the opinion of Mr. Surrogate WINGATE, 206 App. Div. 682.)

Although the widow is not entitled to any part of the estate and

is, therefore, not a person who may file objections, the issue raised by her objection to the payment of $700 to an alleged creditor was tried. Upon the evidence I find that the payment was properly made in settlement of a valid claim based on a debt of the decedent. Credit therefor is allowed the executrix in the amount paid. The objections are dismissed on the merits. Costs to the executrix and allowance to the special guardian, payable out of the estate. Settle decree accordingly.