(90 Misc. Rep. 191)

### DUCAS v. GUGGENHEIMER et al.

(Supreme Court, Special Term, New York County. April 8, 1915.)

1. HUSBAND AND WIFE ☞279 — SEPARATION AGREEMENT — ACTION TO SET ASIDE—EVIDENCE.

   In a wife's action to set aside a separation agreement, evidence as to the conduct of the parties was relevant only as showing whether she executed the agreement of her own free will and with knowledge of all material facts, and, as to the husband, whether the agreement fulfilled the test of good faith required by law.

   [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1054, 1056–1060; Dec. Dig. ☞279.]

2. HUSBAND AND WIFE ☞278—SEPARATION AGREEMENT—REQUISITES AND VALIDITY.

   The law permits the making of separation agreements between husband and wife, who are living apart, though it disapproves such agreements where the parties are living together; but the courts, in safeguarding the rights of the wife, require that such agreements shall be free from the taint of fraud or duress, and that they shall be fair, equitable, and adequate, considering the husband's circumstances, and regard such agreements as arising out of a fiduciary relation requiring the utmost good faith on the husband's part, and the disclosure of all material facts, so that the wife may know his circumstances and be under no misapprehension as to what she is doing, in which case she is the best judge of what is necessary for her support.

   [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1046–1053; Dec. Dig. ☞278.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. HUSBAND AND WIFE ☞279—SEPARATION AGREEMENT—EFFECT.

A separation agreement, so long as observed by the husband, is a complete bar to the maintenance of an action for separation under the statute, and finally binding as to the amount the wife shall receive for her support.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1054, 1056–1060; Dec. Dig. ☞279.]

4. HUSBAND AND WIFE ☞279—SEPARATION AGREEMENT—VALIDITY—ADEQUACY AND FAIRNESS.

Where the parties were married in 1900, and for several years the husband's expenditures for the plaintiff and her child, exclusive of board and lodging, varied from $5,500 to $6,800 per annum and at one place their living expenses were from $10,000 to $12,000 a year, and the expenses for 1906 were between $18,000 and $20,000, in which year the husband had an income in excess of $64,000, and at which time he had assets in excess of $850,000, a separation agreement then made, under which the wife was to receive $4,000 for her support and $2,000 for the support of the child whose custody she had during his minority, made by defendant through his attorney, without actual fraud, but without a disclosure as to his actual circumstances and income, and induced on her part by a reliance on the attorney and by a desire to avoid litigation, in view of the standard of living which the husband had adopted and the amount which would permit a standard of living commensurate with his income, was sufficiently inadequate to warrant setting it aside.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1054, 1056–1060; Dec. Dig. ☞279.]

5. HUSBAND AND WIFE ☞279—SEPARATION AGREEMENT—RETURN OF AMOUNTS RECEIVED.

In a wife's action to set aside a separation agreement on the ground of its invalidity from its inception, and where the money she had received thereunder was necessarily spent for the support of herself and child, she was not precluded from seeking to set aside the agreement by her failure to return the money she had received thereunder, which had been all spent for the support of herself and child.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1054, 1056–1060; Dec. Dig. ☞279.]

6. HUSBAND AND WIFE ☞279—SEPARATION AGREEMENT—LACHES.

A wife, discontinuing her original action, begun in 1911, to set aside a separation agreement made in 1906, and who was not aware of the essential facts upon which she relied for relief until 1912, when she began the present action, was not guilty of laches in failing to bring action before that time.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1054, 1056–1060; Dec. Dig. ☞279.]

Action to set aside a separation agreement by Rachel N. Ducas against Jay C. Guggenheimer, as trustee, impleaded with Benjamin P. Ducas and Robert N. Ducas, appearing by his guardian ad litem, Reed L. Carr. Judgment for plaintiff.

Hays, Hershfield & Wolf, of New York City (Daniel P. Hays, of New York City, of counsel), for plaintiff.

Hatch & Sheehan, of New York City (Edward W. Hatch and Glenn M. Congdon, both of New York City, of counsel), for defendant Ducas.

Julius J. Frank, of New York City, for defendant Guggenheimer.

Townsend Morgan, of New York City, for guardian ad litem.

BLANCHARD, J.  This is an action to set aside a separation agreement which was entered into on December 3, 1906.  The parties to the action were married in Muhlhausen, Alsace, Germany, in August, 1900.  The plaintiff, from my observation of her, is well educated and refined.  She was the daughter of a man who was engaged in a reputable and remunerative business.  While her family was not wealthy, as that term is commonly applied, it was most respectable and enjoyed all the comforts and some of the luxuries of life.  The defendant had come to this country several years prior to his marriage and prospered.  He built up a large and highly profitable business.  At the time of the execution of the agreement in 1906 his income for that year was in excess of $64,000.  His assets were in excess of $850,000.  His income was made up of $25,000 per annum as salary of the B. P. Ducas Company and $12,000 voted him as additional salary, which appears to have been the profits of that company in excess of his salary.  In addition he received $7,500 from another company of which he was president.  Several thousand dollars additional accrued to him as interest on book accounts and money in bank.  The remainder was derived from stocks and bonds owned by him.  The plaintiff claims that at the time of the marriage the defendant represented his income to be from $100,000 to $150,000 per year.  This he denies.  Whatever may be the truth in this respect, it is certain that he was at the time a man of large means.  After the marriage they came to this country.  The wife was an utter stranger to its people and ways, and knew no one in the city of New York.  The defendant rented a house in the city, for which he paid $2,400 per annum.  They employed two maids, and after the birth of their child a nurse in addition.  Thence they moved to the Savoy Hotel.  Here the defendant expended from $10,000 to $12,000 per year.  This sum did not, however, include the defendant's personal expenses, sums devoted by him to relatives, or his living expenditures while out of town.  The evidence shows that he was absent on business several days in each week during most of the year.  Subsequently they resided at the Hotel Netherland.  From 1903 to 1905, inclusive, his expenditures for the plaintiff and her child, exclusive of board and lodging, varied from $5,500 to $6,800 per annum.  In 1906 his entire expenditure appears to have been between $18,000 and $19,000.

[1] For several years prior to their separation disputes and quarrels occurred between them.  Much evidence was admitted upon the trial concerning the causes of this strife.  It is clear, however, that their bickerings may be ascribed to the desire of the defendant to curtail what he regarded as the plaintiff's extravagance.  Whatever may be the defendant's justification for his attitude, either in law or in fact, is immaterial here.  I am satisfied that he is a man in whom the acquisition and possession of money is the dominant element.  It petrifies his feelings and contracts his thought and conduct.  But in this action the court is not concerned with the right or wrong of the conduct of either party.  These questions are left by the law to be determined in a proper action under the statute.  Johnson v. Johnson, 206 N. Y. 561, 100 N. E. 408, Ann. Cas. 1914B, 407; Erkenbrach v. Erkenbrach, 96 N. Y. 456.  The evidence presented of the conduct of the parties is relevant only as showing in the case of the plaintiff whether she executed the

agreement under conditions which made it an act of her own free will and with full knowledge of all material facts; and in the case of the defendant whether it fulfilled the test of good faith required by law.

[2, 3] The policy of the law in permitting the making of contracts between husband and wife, as is pointed out in Winter v. Winter, 191 N. Y. 462, 84 N. E. 382, 16 L. R. A. (N. S.) 710, has been of slow growth. The courts, in applying and construing these statutes, have jealously safeguarded the rights of the wife. They have thrown around separation agreements the cloak of their protection, to the end that they shall be free from the taint of fraud or duress, and that they shall be fair, equitable, and adequate, considering the husband's cir- cumstances. Burr v. Burr, 7 Hill, 207; Hendricks v. Isaacs, 117 N. Y. 411, 22 N. E. 1029, 6 L. R. A. 559, 15 Am. St. Rep. 524; Winter v. Winter, supra; Hungerford v. Hungerford, 161 N. Y. 550, 56 N. E. 117; Galusha v. Galusha, 138 N. Y. 272, 33 N. E. 1062; Johnson v. Johnson, supra. In early times the dominion of the husband over the wife was presumed. Her freedom of action and of contract, apart from her husband, was most limited. As more enlightened views came to prevail and her individual freedom was established, the courts, being mindful of the special and intimate relation of the marital bond which might place in the hands of the husband a weapon to be improperly used for his advantage, regarded it as one of a fiduciary character. Story in his Equity Jurisprudence says:

"But by far the most comprehensive class of cases of undue concealment arises from some peculiar relation or fiduciary character between the par- ties. Among this class of cases are to be found those which arise from the re- lation of client and attorney, * * * husband and wife. * * * In these and the like cases the law, in order to prevent undue advantage from the unlimited confidence, affection, or sense of duty which the relation naturally creates, requires the utmost degree of good faith (uberrima fides) in all trans- actions between the parties. If there is any misrepresentation, or any con- cealment of a material fact, or any just suspicion of artifice or undue influ- ence, courts of equity will interpose and pronounce the transaction void, and as far as possible restore the parties to their original rights."

And again:

"So in cases of family agreements and compromises, if there is any con- cealment of material facts, the compromise will be held invalid upon the ground of mutual trust and confidence reposed between the parties." Story's Equity Jurisprudence, vol. 1, §§ 217 and 218; see, also, Boyd v. De La Mon- tagnie, 73 N. Y. 498, 29 Am. Rep. 197; In re Smith, 95 N. Y. 522; Barnard v. Gantz, 140 N. Y. 249, 35 N. E. 430.

Any ordinary contract is vitiated by fraud or duress. Separation agreements thus arising out of a fiduciary relation require a course of conduct uberrimæ fidei on the husband's part. While the law frowns upon separation agreements made while the parties are living together, it permits them if they are living apart. If parties are unable to agree they may separate, but any contract for the separate maintenance of the wife must be made under circumstances wherein all the material facts are disclosed. She must be placed in a position, so that when she binds herself she does so under no misapprehension of what she is doing. She should know her husband's circumstances and any other facts which might affect the terms of the contract, so that she may

accept or reject her husband's proposals. The courts have held that she is the best judge of what is necessary for her support (Winter v. Winter, supra), and that having entered into the agreement the same is, so long as observed by the husband, a complete bar to the maintenance of an action for a separation under the statute, and finally binding as to the amount she shall receive for her support (Galusha v. Galusha, supra; Johnson v. Johnson, supra). The wife, therefore, when she thus finally binds herself and waives her statutory remedies, should be regarded as having done so only when she is in possession of every material fact affecting her act, and, furthermore, it is the duty of the husband, he being in a position of trust, to disclose such facts. The courts should require the contract to be the free act of the parties rather than the product of shrewd bargaining by astute intermediaries, however free these bargainings may be from the taint of fraud or duress. If such are permitted, the chances of the wife being overreached are increased. The wife is usually in the weaker position, since hers is the necessity for support. Her necessity, therefore, and a desire to avoid litigation, which is favored by law, may become a powerful weapon in the hands of the husband or others to obtain from her an agreement which binds her during her life and to which she may accede without that full freedom of action which should surround the making of such agreements.

[4] Applying the foregoing principles to the contract in suit, the circumstances surrounding its making fail in several respects to meet these tests, and the contract should be set aside. While the evidence is insufficient to sustain any finding of actual fraud or duress by any of the parties, there is no doubt that the terms of this contract were never satisfactory to the plaintiff, and that she agreed to them under protest. Her assent was predicated upon a misapprehension of her husband's income and circumstances. Had she known these facts, and then have accepted the terms proposed, she would be bound thereby, as she was the best judge of her necessities. This, however, she did not do, and it is conceded that she was never satisfied with the amount allowed, and asserted that the amount was insufficient for her support and that of her child, based upon the standard of living theretofore maintained by the defendant and the station in life which was the reasonable right of herself and her child. Throughout a long period prior to the separation, the defendant was continually endeavoring to instill in her mind his inability to afford his expenditures and the limited amount of his means. While his attempt to minimize his means in her eyes may fall short of being regarded as actual fraud, it was certainly founded upon untruth, and was calculated to deceive her as to the amount he could reasonably afford to pay for the support of his immediate family. In addition, he was guilty of a suppression of the truth in failing to declare his actual circumstances, which it was his duty to do, since it was a most material fact entering into her consent to relinquish her legal remedies.

The plaintiff contends that Mr. Guggenheimer represented to her that the defendant's income was only $20,000 per year. If he did so with knowledge of the true facts, he was guilty of fraud. In the face

of his denial, which was unshaken, and the lack of corroboration of her statement, the evidence is totally insufficient to warrant any such finding. Furthermore, the character of the defendant tends to substantiate the truth of his statement that he did not know what Ducas' income was. Such knowledge cannot be presumed from the relation of attorney and client. But it was the duty of the defendant in delegating authority to Mr. Guggenheimer, to have disclosed these facts to Mr. Guggenheimer. The knowledge of the principal in the circumstances should be regarded as the knowledge of the agent. The negotiations of Mr. Guggenheimer should be subjected to the same test as though conducted by the defendant. It is clear from the testimony that the plaintiff had full confidence in Mr. Guggenheimer. That the agreement is largely the product of his negotiations is apparent. Whatever influence he exerted upon the plaintiff and her then counsel, now dead, in his capacity as mediator, was exercised by him under what would seem to be a misapprehension of the most important element in the case. He testified that, having arrived at what he considered a sum which would enable her to live suitably, he satisfied himself that he had performed his whole duty in the matter. In this he erred. What he considered suitable was immaterial. What the circumstances of the defendant were and their expenditures while the parties lived together were the factors which should have controlled his judgment. It is thus apparent from his own testimony that the plaintiff, in relying on his judgment, which was a potent factor in obtaining her assent, was influenced by immaterial considerations and consented in the mistaken belief that it was the best arrangement that could be made in the circumstances. It was the duty of Mr. Guggenheimer to have informed himself of all the conditions, or have refrained from advising the plaintiff.

The plaintiff at all times displayed a desire to avoid notoriety and litigation. This is commendable in the eye of the law. The fact that she chose to accept the best terms she could get, although she was advised that she could obtain information of her husband's means by commencing an action, should not now preclude her from being freed from a contract which, rather than plunge herself into litigation, she accepted under a misapprehension of a material fact. While, in my opinion, the evidence is insufficient to show that the plaintiff was actually defrauded, she certainly was overreached by the shrewd manipulations of the defendant Ducas. While the plaintiff was not coerced by direct threats, importunities, weakness, or fear to sign the contract, her assent was not obtained under that freedom of action which the law apparently does and should require.

In considering the terms of the contract itself, further grounds seem to be presented to set it aside. Under it the plaintiff was to receive the sum of $4,000 per year for her support and $2,000 for that of the child, whose custody was given her during his minority. While it is true that the expressions of opinion wherein the courts have laid down the measure of the obligation of the husband to support his wife are found in decisions declaratory of the statute, there seems to be nothing in reason or principle why they should not be applied here. The support of the wife by the husband is a legal obligation. The

amount to be paid to meet such obligation is determined by the test of whether it is reasonable in view of all the circumstances. It may not be increased or diminished by reason of the degree of the husband's wrong. Awards as high as one-half of the total income of the husband have been made. On the other hand, when the husband's income exceeds in amount a sum permitting the most lavish scale of living, the court will not award a definite proportion, such as one-third or one-half, but will limit itself to an amount which will permit the wife to live with a reasonable degree of luxury. Gould v. Gould, 61 Misc. Rep. 120, 114 N. Y. Supp. 331. If the contract herein is sustained, the plaintiff will be compelled to live during her life, so far as her support by her husband is concerned, on the amount allowed. This source is the sole one that can be presumed. When her son reaches his majority, that sum will be decreased by one-third. That this event will impose a further restriction upon her is evident, as two persons can live together to their better mutual advantage by their common use of many things than a single person. Her time of life then will reasonably require a greater amount of ease and comfort than at present. From the evidence presented the defendant expended in some years, exclusive of plaintiff's and the child's board and lodging, a sum in excess of the total sum provided in the contract, and in other years almost that amount.

A reasonable standard of living having been adopted, the wife has the right to obtain, when she is living apart from her husband under a decree or separation agreement, if the husband's income warrants it, an amount which will permit her to live according to that standard. In Hungerford v. Hungerford, supra, a separation agreement was set aside on the ground, among others, of inadequacy. While the facts there presented have no similarity to those at bar, nevertheless, that case in principle is an authority here. The test of adequacy is not what constitutes the minimum upon which a person can live. The question is whether the sum is in itself a reasonable one, and will permit of a standard of living commensurate with the husband's income and the mode adopted by him when the parties lived together. The sum received by the plaintiff for her support under the contract was one-sixteenth of the defendant's income and less than one-quarter of his total expenditures. As pointed out before the joint expenses of herself and the child, exclusive of their food and lodging, while she and her husband lived together, was about the same as the total amount allowed under the contract. At that time the child was a young infant and the cost of his maintenance less. The evidence shows that she will be unable to live as well under the contract as she did prior to its existence, according to the standard adopted by the defendant, which was reasonable, easily commensurate with his income, and not unduly lavish. Furthermore, the defendant's income from investments was about four times the sum given her by the contract. The amount, therefore, reserved to her in the contract was sufficiently inadequate to warrant the intervention of a court of equity.

[5, 6] It is further contended on behalf of the defendant that equity should refuse the plaintiff relief, since she violated certain provisions of the agreement, has failed to return the money that she has received

under the agreement, and that she has been guilty of undue delay in bringing this action, and is furthermore precluded because for several years she accepted the terms of the contract without protest. In respect of the first ground stated the violations were not sufficiently grave to sustain this contention, and, furthermore, there appears to be no evidence that there was a willful intention on her part to disregard its provisions. The maxim "He who seeks equity must do equity" does not apply here. The plaintiff is not seeking the aid of the court to enforce this agreement. She is asserting its invalidity from its inception. She should not be precluded from asserting this claim because she may have been guilty of some minor violations of an agreement which at the time she regarded as invalid and concerning which the courts would seem to hold the same view. The money which she has received and which it is contended should be returned as a condition precedent was undoubtedly all necessarily spent for the support of herself and the child. Hence she is not required to return either all or any portion of it. Hungerford v. Hungerford, supra.

The plaintiff's discontinuance of her original action begun in 1911 to set the contract aside was followed shortly thereafter by the commencement of this action. This certainly should relieve her of the charge of laches. Furthermore, the plaintiff was not aware of the essential facts which are the chief basis of her prayer for relief in this action until 1912. She cannot be accused of laches in failing to proceed in this action before that time. Her acceptance of the benefits of the agreement should be viewed in like manner.

The contract is accordingly set aside and judgment given the plaintiff. Plaintiff will present findings.