MARY ALICE TIRRELL, Plaintiff, v. MARTIN LEWIS TIRRELL, Defendant.

(Supreme Court, New York Special Term, May, 1919.)

Contracts — when separation agreement between husband and wife void — dower — consideration — marriage — Domestic Relations Law, § 51.

An agreement to live separate and apart entered into while the parties are living together as husband and wife is an alteration of the marriage and therefore void under section 51 of the Domestic Relations Law which declares that a husband and wife cannot contract to alter or dissolve the marriage or to relieve him from his liability to support her.

A separation agreement by which a wife at the time forty-eight years of age, in consideration of $6,000 in cash, and $160 a month for two years, released all her dower interest and relieved her husband, whose net income as a physician is not less than $10,000 a year, from any and all liability for future support, is clearly inequitable and will be set aside though

Supreme Court, May, 1919. [Vol. 107.

entered into on the part of the wife by the advice of counsel, nor will she be denied relief because she does not account for the $6,000.

Action to set aside a separation agreement.

Rembaugh & Towle (Bertha Rembaugh, of counsel), for plaintiff.

Michael J. Horan, for defendant.

Philbin, J. The plaintiff seeks to set aside a separation agreement made directly with her husband, the defendant, without the intervention of a trustee. Plaintiff asserts that the agreement is invalid for two reasons: (1) it is claimed that the parties were living together and separated after the agreement was made and because of it; (2) it is further claimed that the agreement is inequitable.

On July 8, 1916, the parties were living together, although their relations had been very strained for a long period. On that day the husband caused a summons and complaint to be served upon the plaintiff in an action for a separation alleging cruelty. Thereafter and while continuing to live together negotiations were entered into for a settlement of the suit by making an agreement of separation. About August 1, 1916, the defendant went away on a vacation for a period of three weeks, returning home about August twenty-first. About three days later the plaintiff went to the country for a sojourn of five days, paying her expenses with money supplied by the defendant. On August thirty-first the plaintiff returned and took lunch at the house. Prior to that day negotiations had been commenced between the attorneys for the parties as to the terms of the proposed agreement and a partial division of the effects of the parties had been

considered. On the afternoon of August thirty-first the agreement of separation and a release of dower were signed. That night the plaintiff occupied the house, but the defendant absented himself. Since then the parties have lived apart from each other. On the foregoing, I find that the parties were living together on August 31, 1916, when the separation agreement was executed and that the separation was the result of the agreement.

Section 51 of the Domestic Relations Law provides in part as follows:

" *Powers of married woman.* A married woman has all the rights in respect to property, real or personal, and the acquisition, use, enjoyment and disposition thereof, and to make contracts in respect thereto with any person, including her husband, and to carry on any business, trade or occupation, and to exercise all powers and enjoy all rights in respect thereto and in respect to her contracts, and be liable on such contracts, as if she were unmarried; *but a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife.* * * *." (Italics by the court.)

If the agreement between the parties aimed to *alter* the marriage then the agreement is void, being prohibited by the italicized part of the section quoted. The law carefully guards the integrity of the marriage status, which involves not only support for the wife and a mere living together, but cohabitation as well. When the parties contract to live separate and apart, they undertake to bring about new conditions with reference to each of the above essentials. See *Hunt* v. *Hunt,* 4 De G., F. & J. 221; 45 Eng. Rep. 1168. Such new conditions clearly constitute an *alteration* of the marriage. On the ground, therefore, that section 51 of the Domestic Relations Law expressly for-

Supreme Court, May, 1919.            [Vol. 107.

bids the contract in question, I find that the same is void. This is in accord with the decision in the similar cases of *Sunderlin* v. *Sunderlin,* 123 App. Div. 421, and *Kaufman* v. *Kaufman,* 158 id. 892. See, also, *Boyd* v. *Boyd,* 130 App. Div. 161, 165.

There are numerous cases holding that *after* the parties have separated they may enter into a so-called separation agreement. See *Winter* v. *Winter,* 191 N. Y. 462. Strictly speaking, such agreements are not separation agreements — not agreements *to* separate — but agreements concerning a separation which has already occurred. They do not *alter* the marriage but merely *regulate* an existing condition and make provision for the wife's support. *Dower* v. *Dower,* 36 Misc. Rep. 559, 561; *Lawson* v. *Lawson,* 56 App. Div. 535, 537.

The argument may be advanced that the type of agreement now before the court should be upheld on the authority of *Clark* v. *Fosdick,* 118 N. Y. 7, and *Winter* v. *Winter, supra.* See *Weeks* v. *L'Ecluse,* N. Y. L. J. Nov. 16, 1917; affd., without opinion, 183 App. Div. 928. In the *Clark* case the agreement was made through the medium of a trustee; otherwise the facts there are similar to those here. The *Winter* case states that any contract for separation and support, which could formerly have been made by means of a trustee, can now be made without one. Reading these two cases in conjunction with each other, it might appear that the Court of Appeals entertains the view that the agreement in this case is valid. If such be the fact then the *Sunderlin* and *Kaufman Cases, supra,* have been erroneously decided by the Appellate Division. However, in my opinion, there is no inconsistency between the decisions of the Court of Appeals and the Appellate Division. It is pointed out in the *Boyd* case that the contract in *Winter* v. *Winter* was

upheld on the sole ground that there the husband and wife were actually living apart at the time the agreement was signed. The *Clark* case was decided in 1889 and is no longer applicable in view of the enactment by the legislature of the italicized prohibitory clause of section 51 of the Domestic Relations Law, quoted in part above. That prohibition as to altering the marriage relation first found its way into the law through chapter 594 of the Laws of 1892. The situation, as I see it, is this: the rule of the *Clark* case has been abrogated by legislative enactment; the decision of the Court of Appeals in *Winter* v. *Winter* controls and upholds an agreement to *regulate* an existing separation; the decision of the Appellate Division in the *Sunderlin* and *Kaufman* cases controls and condemns an agreement which looks to a future separation and seeks to *alter* the marriage relation. The affirmance in the *Weeks* case by the Appellate Division does not indicate a departure from the law as previously declared in the *Sunderlin* and *Kaufman* cases. In the first place, the affirmance was without opinion and therefore only the result reached by Special Term is approved. Secondly, it is clear that, notwithstanding the reasoning as to the *Clark* and *Winter* cases, the Special Term placed its decision squarely on the view that the agreement then under consideration was not an agreement for separation, but one for maintenance. The separation was not induced by the agreement; on the contrary, the agreement was the result of an abandonment. The conclusion so reached is clearly not at variance with the views expressed herein. Even if there had been a trustee in the *Sunderlin* and *Kaufman* cases, such fact would not have altered the decision, for what is forbidden by statute cannot be made lawful by the device of using a trustee. It may be observed, however, that an agreement, looking to a

future separation, would require a trustee to give it validity if it were not otherwise condemned by the law. The reason for this is that the common-law rule, preventing dealings between husband and wife, has been abrogated only in so far as set forth in the Domestic Relations Law. All transactions not within that statute are still forbidden. It has no relation to such contracts as were made in the *Clark* and present cases. *Winter* v. *Winter* deals only with a contract made after separation and is within the enabling act as it relates to property rights of the wife. For that reason no trustee was necessary. The present agreement is clearly not for the sole purpose of providing for the support of the wife, but is one embodying an understanding to separate. The separation was to take place *because* of the agreement and only in the event that the minds of the parties met as to terms. If the negotiations had failed the parties would, for all that appears, have continued to live together. The wife apparently so intended.

I shall now consider the second claim of the plaintiff. It is well established that all separation agreements must be free from the taint of fraud and duress, and in addition must also be fair, equitable and adequate, considering the husband's circumstances. *Hungerford* v. *Hungerford,* 161 N. Y. 550; *Ducas* v. *Guggenheimer,* 90 Misc. Rep. 191; affd., 173 App. Div. 884. By the making of the agreement in question the plaintiff, then forty-eight years of age, received the sum of $6,000 and the further sum of $100 a month for two years — a total payment of $8,400. She released all dower interest and relieved her husband from any and all liability for her future support. The evidence established that the defendant is a physician; that he owns a $9,000 equity in the house in West One Hundred and Nineteenth street where the parties lived, as well

as other real estate worth about $4,000; that the parties kept two servants; that they traveled considerably and had an automobile; that the plaintiff was not stinted on clothing; that defendant had the sum of at least $6,000 in bank as well as a checking account with a balance between $1,000 and $2,000 on the date of the separation agreement. As gross income from his profession, the defendant receives about $13,000 per year. Deducting reasonable and necessary professional expenses, his net income is not less than $10,000 per year. Deducting from the gross income all expenses of the defendant, both professional and family, there remained an unexpended balance of income for 1916 of at least $6,000. The situation is, therefore, that the defendant gave the plaintiff a sum equivalent to what he was able to save in one year and then supported her at the rate of $100 per month for two years. Now at the age of fifty years the plaintiff is without any means of support except such as is afforded by whatever may be left of the sum of $6,000 received by her two and a half years ago. An investment of the $6,000 would produce about six dollars weekly. According to the mortality tables the plaintiff has a life expectancy of many years. If she draws on principal she is sure to be destitute in old age. The law will not permit a husband with a net income of $10,000 a year to place his wife in such situation. The agreement is clearly inequitable and should be set aside. *Ducas* v. *Guggenheimer, supra.* In so concluding, the fact has not been overlooked that the agreement was entered into by the plaintiff with the advice of counsel and after prolonged discussion. That may be material in·a close case but it is immaterial where the inequitableness is clear.

Finally as I have reached the conclusion that the agreement is not only voidable because inequitable

but also void as expressly prohibited by law, the plaintiff will not be denied relief merely because she has not accounted for the lump sum of $6,000 paid her. Such fact, however, can be taken into account in any future proceeding between the parties. See *Kaufman* v. *Kaufman, supra.*

Judgment accordingly.