MARY ALICE TIRRELL, Respondent, v. MARTIN LEWIS TIRRELL, Appellant.

First Department, January 16, 1920.

Husband and wife — suit for cancellation of separation agreement — evidence establishing actual separation prior to execution of said agreement — adequate provision for support of wife — fraud — duress.

In a suit by a wife against her husband to obtain the cancellation of an agreement of separation upon the ground that said agreement was illegal, invalid, unfair and inequitable, and that the *separation* of the parties was pursuant to such agreement, and that no fair, just and equitable provision was made therein for the support and maintenance of the plaintiff, *held*, upon all the evidence, that there was an actual separation of the parties prior to the execution of said agreement; that adequate provision was made for the plaintiff commensurate with the defendant's financial condition and ability, and that there was no perpetration of fraud upon the plaintiff nor was she under any restraint or duress at the time of the execution of the agreement.

Therefore, the defendant should have judgment upon the merits dismissing the complaint.

Although under section 51 of the Domestic Relations Law a husband and wife cannot contract to alter or dissolve the marriage, or to relieve the husband from his liability to support his wife, the law is well settled that having separated, an agreement between them to continue to live separate and apart and providing for the separate support of the wife, does not violate any statute and is a valid and enforcible contract.

APPEAL by the defendant, Martin Lewis Tirrell, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of May, 1919, upon a decision of the court rendered after a trial at the New York Special Term.

*Michael J. Horan,* for the appellant.

*Bertha Rembaugh* of counsel [*Rembaugh & Towle,* attorneys], for the respondent.

MERRELL, J.:

The plaintiff and defendant were married at Coaticook, Province of Quebec, Canada, on August 9, 1894. There is no

issue of their marriage. The defendant is a practicing physician and surgeon in the city of New York. Directly after the marriage of the parties they came to New York to reside, and for a time appear to have lived happily together. At first the defendant had a limited practice and the early married life of the parties was in modest circumstances. As time passed the defendant's practice increased and the parties were able to live more expensively. With the coming of affluence the domestic felicity of the parties seems to have suffered. During the twenty-four or twenty-five years of their married life since coming to the city of New York only the very first years seem to have been passed harmoniously. The evidence shows that for many years the parties have been in the habit of quarreling almost incessantly, the plaintiff admitting that language of the most abusive and indecent character was constantly used between the parties in their continual bickerings and quarrels. Since 1909 the parties have not cohabited together as husband and wife, although during all the period since their marriage and until August, 1916, they appear to have lived under the same roof and, in a way, to have been members of the same household. During these years the defendant was a busy, practicing physician, devoting himself entirely to his profession, while the plaintiff attended to the management of the household. Plaintiff, for some time prior to the events leading up to the actual separation of the parties, was the president of the Women's Relief Corps of the Grand Army of the Republic, which organization demanded a part of her time.

After years of marital infelicity and the relations of the parties becoming strained to the breaking point, on July 8, 1916, the defendant commenced an action against the plaintiff to obtain a decree of separation upon the ground of cruel and inhuman treatment of defendant by plaintiff. At the time of the commencement of said action plaintiff and defendant were residing beneath the same roof in the city of New York, sometimes taking their meals together, but otherwise occupying separate rooms. As before stated, since 1909 they had not cohabited as husband and wife. The evidence shows that during recent years they were very little in each other's society, and while the marital relations have never been dissolved by the decree of any court of competent jurisdiction, still to all

intents and purposes the plaintiff and defendant, while sheltered by the same roof, were, in fact, estranged and separated.

After the commencement of the action for separation the plaintiff herein (the defendant in the separation action) retained a reputable attorney to represent her in the action, and said attorney duly appeared therein in defendant's behalf. Thereupon and during the month of July, negotiations were entered upon between the parties, aided and assisted by their respective attorneys, looking toward an adjustment of the rights of the parties, to the end that they at that time having separated, proper provision should be made for the separate support and maintenance of the defendant in said action (the plaintiff herein) out of the property of this defendant, upon consideration of said defendant's releasing plaintiff from all further liability for her support and releasing and discharging her dower in his real estate. During the pendency of said separation action, and except for such negotiations, the parties saw little of each other. Later in the month of July the defendant left plaintiff and spent his summer vacation away from the city of New York, returning about the 21st of August, 1916. Within two or three days thereafter the plaintiff herein left for a visit among friends at Beacon Hills, N. Y. Prior to leaving, a settlement had been agreed upon between the parties to the effect that the parties should separate and thereafter live separately and apart, and that the household effects of the defendant herein should be divided between them. Written lists were prepared specifying a division of the household furniture and personal effects of the parties. Adjustment was made through the defendant paying plaintiff for certain of the goods and household effects that he desired to keep which had fallen to plaintiff upon such division. Through negotiation it had been further agreed that the defendant herein should pay the plaintiff the sum of $6,000 in cash upon the execution of proper instruments releasing her dower in any real estate of which the defendant was seized, and that in addition thereto defendant should pay plaintiff the sum of $100 a month for the period of two years following the execution of said release. In the month of August, 1916, before the plaintiff herein left to visit her

friends, and when apparently the understanding of the parties was that all marriage relations were at an end, the plaintiff's share of the personal property and household effects of the parties was packed up awaiting transportation from the home. Unquestionably the parties then regarded actual marital relations between them as a closed chapter. There only remained the execution of defendant's agreement for his wife's settlement and her agreement releasing him from further responsibility.

On August 31, 1916, the plaintiff returned from her visit to her friends at Beacon Hills, and, stopping merely for a cup of tea at the home of the parties, went to the law offices of her attorney in the city of New York, and there met the defendant and his attorney. Prior to that time papers had been prepared for execution of the parties in accordance with the agreement which they had reached, providing for the payment by the defendant herein to the plaintiff of $8,400, being $6,000 in cash and $100 a month for the period of two years, and which sum the plaintiff herein was to accept from the defendant in full of all claims for support and maintenance or any other claim of any other kind that she had or might have against the defendant, including her dower interest in his real estate. The parties and their respective counsel, on said 31st day of August, 1916, at the office of the attorney for the plaintiff herein, conferred together at great length. During their conferences and negotiations looking to a settlement of the action for separation which had been brought against the plaintiff by the defendant herein, defendant's financial condition and property were discussed at length by the parties and their respective counsel. In addition to the attorney for the plaintiff herein who represented her at said conference and who was an attorney of unimpeachable character and high standing at the bar, another reputable attorney was called in to aid and counsel with the plaintiff concerning her rights on such settlement. After long negotiations, extending from two o'clock in the afternoon until seven o'clock at night, the parties finally reached an agreement and the paper referred to as a separation agreement was executed and acknowledged by both parties under their hands and seals. This paper, executed August 31, 1916,

recites the fact of the parties having theretofore separated, and that they had reached a mutual understanding, and that a division of the personal property had been theretofore made by the parties, which was not to be questioned, altered or disturbed, and it was agreed that the defendant herein should pay to the plaintiff the said sum of $8,400, $4,000 of which was to be and was, in fact, paid upon the execution of said agreement, and $2,000 was to be paid on the seventh of September following, when it was agreed the plaintiff should execute a release of dower from the specific parcels of real estate of which the defendant was then seized. The agreement further provided that the balance of said settlement provision of $2,400 should be paid $100 per month for the term of two years, commencing September 1, 1916, and it was therein agreed by the plaintiff herein that said payments should be by her accepted in full of all claims for support and maintenance, and in full of any other claim that she had or might have against the defendant herein, including her dower interest in his real estate. On September 7, 1916, the parties again met and the plaintiff herein executed an instrument releasing to the defendant her dower in his said real estate. Thereupon the balance of $2,000 in cash was paid by the defendant to the plaintiff, and thereafter the defendant met and discharged, as they fell due, each of the twenty-four payments of $100, and has in all things fully kept and performed the terms of the agreement on his part to be performed.

Immediately after the execution of the agreement on August 31, 1916, the plaintiff herein went to the home of the parties and remained over night, as the hour was then too late for her to find lodging elsewhere. Under the terms of the settlement she was to have until September tenth to remove her personal effects and share in the division of the household effects from the home of the parties. The defendant herein did not return to his home that night, but passed the night with a friend in New Jersey. The following morning, on September first, the plaintiff herein left the home and has not since been an inmate of defendant's household.

Matters drifted along without suggestion that the agreement thus entered into was invalid, the parties evidently treating the same as a finality, until on or about the 9th of

First Department, January, 1920.          [Vol. 190.

March, 1918, when the present action was commenced by the plaintiff against the defendant to obtain a cancellation of said agreement entered into between the plaintiff and the defendant on August 31, 1916, and to set the same aside, and to restore the plaintiff to her rights and position as the wife of the defendant, upon the ground, as stated in the complaint herein, that the agreement was illegal, invalid, unfair and inequitable, and that the *separation* of the parties was pursuant to such agreement, and that no fair, just and equitable provision was made therein for the support and maintenance of the plaintiff. The defendant duly appeared and defended said action, and the issues were tried before the court at Special Term in February, 1919. Upon the evidence adduced upon the trial of the issues herein, the learned court at Special Term rendered a decision in plaintiff's favor setting aside the said agreement upon the ground that at the time of its execution the parties were living together, and that the separation of the parties resulted from said agreement; that said agreement contravened the statute with reference to contracts between married persons, and that while the evidence did not show the perpetration of fraud or duress upon plaintiff by defendant, the same did show that the agreement was unfair, inequitable and unjust, in that, considering the defendant's circumstances in life, no sufficient or adequate provision was therein made for the plaintiff. (107 Misc. Rep. 179.)

This action is brought and the decision of the learned court at Special Term was based upon the assumption that at the time of its execution the parties were living together as husband and wife, and that there had been no separation between them, and that the separation resulted from the execution of said agreement.

From a careful review of the evidence I am unable to adopt the conclusion which the learned trial court reached. While under the terms of the Domestic Relations Law of the State of New York (§ 51) a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife, still the law is reasonably well settled, I think, in this State, that, having separated, an agreement between the husband and wife to continue to live separate and apart and providing for the separate support of

the wife does not violate any statute, and is a valid and enforcible contract. (*Winter* v. *Winter*, 191 N. Y. 462.) Whether or not, under the evidence, there was an actual separation of the parties hereto prior to the execution of said agreement, is the important question. The learned trial court assumed that the evidence showed that the separation was the result of the execution of the agreement in question. If such was the fact upon the evidence, there can be little question but that the learned court below reached the correct conclusion. (*Kaufman* v. *Kaufman*, 158 App. Div. 892; *Sunderlin* v. *Sunderlin*, 123 id. 421.) The evidence shows, as before stated, that for nine years or thereabouts, while still legally bound together, the parties had been practically living separately and apart. During this period they had not continued the marriage relation by cohabitation. They saw little of each other, and what little intercourse occurred between them was almost always of an acrimonious and discordant character. The plaintiff herein admits that during recent years she had seen very little of the defendant. On July 8, 1916, the defendant brought the action against the plaintiff for a separation because of cruel and inhuman treatment. Following the bringing of such action the parties agreed to live separate and apart. A division of the property was agreed upon and an actual separation and division of the personal chattels of the parties was effected. The parties then for some weeks separated, the defendant going on his summer vacation, and upon his return or shortly thereafter the plaintiff leaving to visit friends in a distant part of the State. The negotiations had reached a point when the plaintiff left to visit her friends that a gross sum had been agreed upon which should be paid by the defendant to the plaintiff for her maintenance and support. The plaintiff admits that she came to New York for the avowed purpose of executing the paper which she now seeks to set aside, and at that time her personal effects had been packed up ready for removal from the home of the parties. The agreement sought to be set aside recited that the parties had separated, and that it was not the intention thereby to interfere with the actual division which had been made of their personal effects. Under such circumstances it cannot be said that the instrument

itself caused the separation. The parties were, in fact, actually separated, and the paper was executed for the purpose of providing a competence for the support of the plaintiff herein, in consideration of which she was to release the defendant from all claim for support and release and discharge her dower in his real property. I, therefore, am of the opinion that the finding of the trial court that the instrument in question was invalid by reason of its execution prior to the separation of the parties, and that the separation resulted from its execution, is not sustained by the evidence. The contrary, I think, fairly appears by the whole evidence.

As to the further ground upon which the written agreement of the parties was held invalid, I think the learned court at Special Term was also in error in holding that said agreement was inequitable in that no adequate provision was made for plaintiff commensurate with the defendant's financial condition and ability. Upon the evidence I think the court below clearly erred in finding the agreement inequitable and in making such inequitableness a legal basis for setting aside the agreement of the parties. I am aware that agreements such as the one under consideration have been set aside by the courts where obtained through fraud, duress, concealment or other unfair advantage and where the provision of the defendant for the wife was disproportionate to her needs and her husband's financial ability. If it appears that the wife has been induced, through fraud, misrepresentation or duress, to agree to accept an inadequate and disproportionate amount in lieu of her husband's legal obligation to support and maintain her, a court of equity may permit her to rescind the agreement upon restitution, so far as possible, of any moneys paid to her by her husband under such agreement. (*Pelz* v. *Pelz*, 156 App. Div. 765; *Hungerford* v. *Hungerford*, 161 N. Y. 550.) But the evidence here fails to disclose the perpetration of fraud upon the plaintiff or that she was under any restraint or duress at the time of the execution of this agreement. No claim is made by her that the agreement was obtained through fraud or duress, and it appears that she was fully advised of the exact financial condition of her husband at the time she executed the paper. For some weeks the matter had been under negotiation between the plaintiff and

her husband and between their respective counsel. O the day the paper was executed plaintiff was represented by a lawyer of acknowledged standing and ability, and a second lawyer was called in to advise the plaintiff with reference to the settlement she should accept. The amount of the defendant's income, his property interests, and ability to provide for the plaintiff, were fully discussed at a protracted session lasting at least five hours. No claim is made that there was any concealment, nor does it appear that the plaintiff was in such a weakened mental or physical condition as to be unable to fully understand her rights in the premises. Under such conditions the parties entered into the agreement for the support of the plaintiff and in consideration of which she agreed to release her dower rights in defendant's real property. Plaintiff herself was best able, being in possession of all of the facts and acting advisedly and without coercion, to determine what sum she would accept as adequate provision for her future support. I know of no precedent for setting aside, because of inadequacy, an agreement fairly entered into by the parties as shown by the evidence in this case. Our courts have uniformly held that agreements thus advisedly made, in the full understanding of the facts, and in the absence of fraud or duress, will be upheld. (*Ducas* v. *Ducas*, 173 App. Div. 884; *Greenfield* v. *Greenfield*, 161 id. 573; *Winter* v. *Winter*, 191 N. Y. 462.)

To hold this contract inequitable and to relieve the plaintiff from the consequences of a contract negotiated and entered into as was that in the present case, would be to do violence to all judicial precedent under similar circumstances.

The findings of the trial court at variance with the views hereinbefore expressed should be disapproved, and the judgment of the court below reversed, with costs to the appellant, and defendant should have judgment upon the merits dismissing plaintiff's complaint, with costs.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concur.

Judgment reversed, with costs, and judgment ordered for defendant dismissing the complaint on the merits, with costs. Settle order on notice.