STELLA H. MARKS, Appellant, *v.* MARCUS H. MARKS, Respondent.

Supreme Court, Appellate Term, First Department, June 8, 1926.

**Husband and wife — separation agreement — action by wife for moneys unpaid by husband under separation agreement made while parties were living together — parties separated one or two days after executing agreement — separation agreement with view of immediate separation and not in contemplation of any contingency in future is valid.**

In an action by the plaintiff for moneys unpaid by her husband under a separation agreement made while the parties were living together, it was error to dismiss plaintiff's complaint where one or two days after the execution of the agreement they separated and for several weeks thereafter the husband paid the stipulated allowance, since a separation agreement made between a husband and wife with a view of an immediate separation and not in contemplation of any contingency in the future is valid. Such separation agreements are illegal only when they contemplate a possible separation in the future or contingent on the happening of a future event.

DELEHANTY, J., dissents, with memorandum.

APPEAL by plaintiff from a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, entered in favor of the defendant after a trial before the court without a jury.

*Sidney S. Bobbe,* for the appellant.

*Teitelbaum & Jay [Louis Jay* of counsel], for the respondent.

LEVY, J. This appeal is from a judgment dismissing the complaint upon the merits in an action by a wife for moneys unpaid by the husband under a separation agreement. The sole reason for this disposition by the court below is that the agreement was made while the parties were living together, although one or two days later they separated, and for several weeks thereafter the husband paid the allowance stipulated. An agreement made under such circumstances, the trial court held, is contrary to public policy, and cited in support of this conclusion the case of *Winter* v. *Winter* (191 N. Y. 462). In that case the husband and wife, after living apart for some time, entered into a separation agreement, the validity of which was attacked on the ground that it was made without the intervention of a trustee. The Court of Appeals, in approving the legality of the contract, held that a trustee was no longer necessary; and in his opinion Judge VANN reviewed at considerable length the decisions bearing upon that precise subject and collateral matters. In the course of his historical review he made this comment (at p. 470): "Agreements like the one considered in *Pettit* v. *Pettit* [107 N. Y. 677], and the one now before us, if made

while the parties are still living together, are held void as against public policy where it is an essential part thereof that they should thereafter separate. (*Poillon* v. *Poillon*, 49 App. Div. 341; *Whitney* v. *Whitney*, 4 App. Div. 597; *Maney* v. *Maney*, 119 App. Div. 765.) "

This observation, which had no part in the determination of the *Winter* case, appears to be an historical reference, without comment, to a rule laid down in the three Appellate Division cases cited therein, or at most mere dictum. It seems in direct conflict with *Clark* v. *Fosdick* (118 N. Y. 7), where a separation agreement, through the intervention of a trustee, between a husband and wife living together, but contemplating immediate separation, was held valid. That case followed the authority of *Carson* v. *Murray* (3 Paige, 483, 501) in holding that " a valid agreement for an immediate separation between a husband and wife, and for a separate allowance for her support, may be made through the medium of a trustee." In the *Winter* case the court said (at p. 472): " In view of the legislation which permits husbands and wives to contract directly with each other, any contract for separation and support, which they could formerly have made by means of a trustee, they can now make without one." It would thus follow that if an agreement for an *immediate* separation and a separate allowance was valid, if made by means of a trustee, as held in the *Clark* case, it should be equally valid now without such trustee.

Two objections which might be urged against this conclusion must be considered: *First*, the possible effect of section 51 of the Domestic Relations Law in prohibiting contracts between husband and wife " to alter or dissolve the marriage or to relieve the husband from his liability to support his wife; " and *secondly*, the observation or dictum in the *Winter* case to the effect that such agreements " are held void." In support of the first objection, *Tirrell* v. *Tirrell* (107 Misc. 179) is cited to the effect that the prohibition of section 51 of the Domestic Relations Law as to altering the marriage relation was first enacted in 1892, three years after the *Clark* case was determined. Accordingly, in the *Tirrell* case the court at Special Term held that the rule holding valid an agreement to separate in the immediate future, at least through the medium of a trustee, was changed by the provision of the statute for which section 51 was thereafter enacted as a substitute. The judgment was reversed, however, by the Appellate Division (190 App. Div. 463) on the ground that the facts indicated that the agreement was drawn after actual separation. But in the Court of Appeals (232 N. Y. 224) the original judgment was reinstated for the reason that the agreement was considered void as being unfair,

27

inequitable and unjust. The opinion of the court of last resort cannot, therefore, be regarded as an indorsement of the view in the court of first instance, that the effect of section 51 was to abrogate the rule in *Clark* v. *Fosdick.*

In view of the trend of the discussion in the *Winter* case as to the progressive liberalization of the married women's statutes and the intent of the Legislature in amending the Domestic Relations Law, not to change but to preserve the law as it previously existed, the holding of the Appellate Term of the Second Department in *Fives* v. *Fives* (122 Misc. 657) in direct conflict with the opinion of Mr. Justice PHILBIN in .the *Tirrell* case, seems very pertinent. The court said (at p. 660): " When chapter 594 of the Laws of 1892 is read in the light of the controlling decisions at the time of its enactment, and when it is remembered that it was but one of a series of statutes granting rights to married women, the conclusion that it was the legislative purpose to destroy existing rights of contract does not seem warranted. Had it been intended to deny a right recognized before the Revolution, the Legislature would undoubtedly have specifically so declared." But in *Dowie* v. *DeWinter* (203 App. Div. 302, 304) the court in the Third Department also held that the rule in *Clark* v. *Fosdick* had been superseded, not by statute, but rather by subsequent decisions. It said: " It is true that in *Clark* v. *Fosdick* (118 N. Y. 7), a case decided by the Second Division of the Court of Appeals, it was held that a contract for ' immediate ' separation, entered into between husband and wife then living together, was a valid contract, but that decision, while it has not been expressly repudiated, has clearly been overborne by subsequent decisions."

This view is criticized in *Fives* v. *Fives* with the comment that no cases are cited in support of this statement. It seems entirely probable that in the *Dowie* case the court was influenced in its expression of opinion by the dictum or observation in *Winter* v. *Winter*. If the decision in the *Fives* case was correct, and the argument on this point seems sound, that the legislative enactment of 1892 did not change the prerevolutionary policy of the law of validating such agreement, it remains to be seen whether " subsequent decisions " of the highest court have had this effect. The only point in the cases subsequent to *Clark* v. *Fosdick* which might possibly be regarded as abrogating the rule laid down by that authority is the observation in the *Winter* case already mentioned. This statement or dictum, as we have previously observed, seems to us a mere historical reference to the three comparatively early Appellate Division cases mentioned there, namely, the *Poillon*, *Whitney* and *Maney* decisions, without any approval of the views

there held.  These decisions were rendered at a time when the necessity of the intervention of a trustee in separation agreements was still vital, and as none of them was accomplished by means of a trustee, the determination may be said to be largely influenced by the absence of what then seemed an essential element to validity. Even the case of *Sunderlin* v. *Sunderlin* (123 App. Div. 421), decided in 1908 in this department, held such an agreement illegal on the sole ground that it was entered into without providing for a trustee. But the *Winter* decision shortly thereafter declared that the bringing in of a trustee was wholly unnecessary for any purpose, suggesting (at p. 472) that " The only reason for resorting to a trustee was the ancient rule that a husband and wife were one person, but both the reason and the rule ceased to exist when the common law was supplanted by statute."  Obviously, at that date the fiction of unity prevailed because a wife had no legal existence apart from her husband, but since then she has been endowed with the freedom of a *feme sole* resulting in the liberty granted her by the Legislature to contract even with her husband in certain proper circumstances.

Moreover, the opinion in the *Tirrell* case that section 51 of the Domestic Relations Law was intended to change the policy voiced in the *Clark* case and to prohibit an agreement in contemplation of immediate separation, seems to be in direct conflict with the interpretation by the Court of Appeals in the *Winter* case, where it is said (at p. 474): " The clause in question was not intended to change, but to preserve the law as it previously existed * * *." The validity of the agreement in the instant case is, therefore, not brought in question either by the *Winter* case or by section 51.  On principle there is no reason for drawing a line of distinction between agreements in contemplation of *immediate* separation and those where the parties have already separated.  We agree with the opinion in the *Fives* case as to the substantial identity of the two situations.  There it is observed (p. 660): " It is said that contracts made when the parties are living apart do not bring about a separation, and, there..re, do not alter or dissolve the marriage. Nevertheless, if they do not bring about the existing separation, many of these agreements carry out oral understandings made while the parties are living together, and all of them provide for the future conduct of the parties toward each other and for the continuation of the separation."  Where parties draw the agreement in contemplation of immediate separation, the general situation is that although they are living under the same roof, their conjugal relations would appear to be just as much altered from the normal state as if they were actually living apart.  In the instant case, in fact, there were vital disagreements immediately

prior to the separation contract and an action for separation had previously been begun.

The statement in 13 Corpus Juris, 466, expresses the current tendency of the weight of authority to the effect that " agreements for separation of husband and wife are valid if made in prospect of an immediate separation, but illegal if they provide for a possible separation in the future." Force is given to this distinction by the following statement from *Galusha* v. *Galusha* (116 N. Y. 635, 641): " Marriage is favored in the law, and as a contract not to marry is against public policy, and void, so, too, is a contract between husband and wife to be divorced, or *in the happening of a future event to live apart.*" (Italics ours.) This opinion in connection with the ruling in *Clark* v. *Fosdick* that contracts between husband and wife through the intervention of a trustee, now unnecessary, are valid if in contemplation of immediate separation, would seem to indicate that only such agreements are under the ban which contemplate a possible separation in the future or contingent on the happening of a future event. The agreement under consideration was made with a view of an *immediate* separation and not in contemplation of any contingency in the future, and the court below, therefore, erred in holding it illegal.

Judgment reversed, with thirty dollars costs, and judgment directed for the plaintiff as prayed for in the complaint, with leave however, to the defendant to appeal to the Appellate Division.

Present: DELEHANTY, LYDON and LEVY, JJ.

DELEHANTY, J. I dissent on the authority of *Winter* v. *Winter* (191 N. Y. 462).