■ EDITH GREER, Respondent, v JAMES GREER, Appellant.— Order of the Supreme Court, Bronx County (Irwin M. Silbowitz, J.), dated December 20, 1984, which granted plaintiff's motion to modify a judgment of divorce dated May 11, 1983, to

the extent of referring the matter for a hearing to a Referee, affirmed, without costs.

Order of the Supreme Court, Bronx County (Irwin M. Silbowitz, J.), dated March 17, 1986, which confirmed the report of the Referee, vacated a stipulation of settlement between the parties found to have been the result of duress, and modified its judgment of divorce dated May 11, 1983, which had been entered pursuant to the stipulation of settlement, to the extent of ordering increased child support in the sum of $100 a week as of October 1, 1985, ordering title to The Bronx property to be transferred to plaintiff simultaneously upon payment to defendant of the sum of $23,000 representing his distributive share plus the sum of $3,000 for mortgage payments, less the arrears of child support accruing from the time of entry of the order of settlement, affirmed, without costs.

The plaintiff, Edith Greer, and the defendant, James Greer, were married in London in 1964. On May 11, 1983, an uncontested judgment of divorce (Irwin M. Silbowitz, J.) was entered upon plaintiff's complaint alleging, *inter alia,* numerous physical assaults upon plaintiff by the defendant, including punching and choking, which in at least one case required police intervention and hospital treatment for plaintiff's injuries.

The divorce decree incorporated without merging the provisions of a stipulation of settlement entered upon the record in open court before Justice Silbowitz on March 23, 1983, while both parties were represented by counsel. The stipulation provided that the plaintiff was to have title to their real property located in Cork Hill, Montserrat, West Indies, and the defendant was to have title to the parties' home in The Bronx, conditioned upon plaintiff's being permitted continued residence with their three children in the Bronx premises for a period of one year. At the time of the entry of the divorce decree the parties' children were aged 20, 17 and 12, and the stipulation provided that defendant was to contribute a total of $75 weekly for the support of the two younger children until they reached 21 years of age. The divorce decree further provided that the court retained jurisdiction of the matter for the purpose of making such further decrees as it might find appropriate.

By notice of motion dated September 10, 1984, plaintiff moved for an order modifying the judgment of divorce to, *inter alia,* grant her permanent possession of the marital premises and increased child support. In support of her motion, plaintiff

alleged that the terms of the divorce decree (i.e., the stipulation of settlement) were inequitable and unconscionable, and that they were the product of duress, mistake and fraud. She further alleged that there were changed circumstances necessitating an increase in child support. Defendant opposed the motion and cross-moved for an order evicting plaintiff from the marital abode. Justice Silbowitz referred the matter to a Special Referee "to hear and report on the issues of whether defendant engaged in duress or that he coerced or harassed the plaintiff during settlement negotiations prior to the agreement, whether the agreement is unconscionable by reason of the former, the financial state of the defendant prior and subsequent to the agreement, the needs of the infant issue and defendant's ability to pay an increase and the amount of alleged arrears."

After 10 days of hearings at which the parties and their children testified, and at which there was introduced extensive documentary evidence supported by testimony of bank officers regarding the parties' finances and contributions to the purchase and maintenance of the properties here at issue, the Special Referee rendered an extensive and detailed report summarizing the evidence and making factual findings and recommendations. The parties agreed to waive a copy of the transcript of the hearing, and to rely on the recollection and notes of the Special Referee for purposes of his report and recommendations.

Initially, we observe that relief from a stipulation of settlement entered into in open court should be granted only upon a showing of good cause. (*Rado v Rado,* 51 AD2d 811.) In *Christian v Christian* (42 NY2d 63), the Court of Appeals summarized the principles generally applicable to court review of separation agreements, which now form the basis of "conversion" divorces under Domestic Relations Law § 170 (5) and (6). Those principles, established over a period of many years and embodying broad considerations of equity which govern the enforceability of agreements between married parties, may appropriately be looked to as guides in determining the existence of "good cause" to provide relief from a stipulation of settlement entered into in open court in a matrimonial action. The Court of Appeals stated (42 NY2d, *supra,* at 72): "Agreements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost of good faith (*Ducas v Guggenheimer,* 90 Misc 191, 194-195, affd *sub nom. Ducas v Ducas,* 173 App Div 884). There is a strict surveillance of all transactions between

married persons, especially separation agreements *(Hendricks v Isaacs,* 117 NY 411, 417, *supra; Benesch v Benesch,* 106 Misc 395, 402; 2 Lindey, Separation Agreements and Ante-Nuptial Contracts [rev ed], § 37, subd 4, p 37-9). Equity is so zealous in this respect that a separation agreement may be set aside on grounds that would be insufficient to vitiate an ordinary contract *(Hungerford v Hungerford,* 161 NY 550, 553, *supra; Cain v Cain,* 188 App Div 780, 782; *Crowell v Crowell,* 135 Misc 530, 532, affd 229 App Div 771). These principles in mind, courts have thrown their cloak of protection about separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and equitably, in a manner so as to be free from the taint of fraud and duress, and to set aside or refuse to enforce those born of and subsisting in inequity".

Bearing in mind that the Special Referee had the opportunity to assess the demeanor and credibility of the witnesses throughout 10 days of hearings, his findings that the child support and property settlement entered into by the parties which formed the basis for the judgment of divorce was demonstrably and fatally tainted by duress inflicted by defendant upon the plaintiff carry particular force. As here pertinent, the Special Referee made the following findings:

"At the time of the matrimonial proceedings between the parties, the parties' relationship was most acrimonious and apparently had developed into one of physical harm and danger. There exists an order of protection for Edith Greer which had been several times extended. Plaintiff has also presented proof of damage to the physical surroundings of the home which was caused by Mr. Greer. The extent and type of tree and shrubbery damage, laying waste the home's landscaping at a time when the parties were bitter adversaries in court, indicates not only that Mr. Greer was making a point with respect to his ownership rights to the property but also his willingness to destroy what is his if it also serves to intimidate his wife * * *

"Karen Greer [the parties' youngest daughter] testified as to the pictures that she had taken of the Bronx County property. She also testified that she was frightened by her father's chopping down of trees on the Bronx property. Pictures taken of the property show an obliteration of the shrubbery surrounding the house. Mr. Greer's testimony that he had done this to eliminate any damage to the house itself is incredible * * *

"In addition to this documentation concerning the parties'

relationship, the parties' son testified that a gun was found belonging to his father. Edith Greer has also testified as to threats made to her by her husband with regard to her life expectancy ('Your days are numbered'). In view of the degree and extent of the duress upon Mrs. Greer, the Court settlement reluctantly agreed to by her should be vacated."

The aforesaid findings of duress in the settlement stipulation were augmented by "overwhelming proof" of plaintiff's greater financial support of the family which, in the context of the Special Referee's full report to the court, further supports his findings that the plaintiff made contributions to the purchase and maintenance of the two properties which were considerably greater than those made by the defendant during the course of the marriage.

Notwithstanding the undeniably significant factor that the stipulation of settlement was entered in open court while the parties were represented by counsel, and strong policy considerations requiring that the courts exercise restraint in reviewing such agreements in order that parties in matrimonial actions will be encouraged to settle their differences with respect to property and child support, we see no basis in the totality of circumstances presented in this matter to disturb the findings of the Special Referee, which were confirmed by Special Term, that the provisions of the parties' settlement here in issue were inequitable and the product of duress inflicted upon plaintiff by the defendant. Our determinations in these matters should be guided overall by the trenchant observation by Judge Cooke in *Christian v Christian* (42 NY2d 63, 73, *supra):* "Because of the law's purpose, to achieve its moral and social goals and to avoid a frustration of those aims, separation agreements must not be permitted to be employed as instruments for the improper exaction in the inducement of execution of unconscionable terms within a frame of inequitable conduct." Concur—Sandler, J. P., Sullivan, Carro, Kassal and Wallach, JJ.